Milton **MAZER**, Administrator of the Estate of Israel Abrams, Assignee of Hattie Lipshutz, Executrix of the Estate of Benjamin Lipshutz, Deceased,

v.

**SECURITY INSURANCE GROUP**
and
**The Medical Protective Company of Fort Wayne, Indiana.**
Civ. A. No. 69–1353.

United States District Court,
E. D. Pennsylvania.
Nov. 13, 1973.

See also, D.C., 53 F.R.D. 617.

M. A. Bernstein, Philadelphia, Pa., for plaintiff.

Henry T. Reath, Philadelphia, Pa., for Security.

Perry S. Bechtle, Philadelphia, Pa., for The Medical Protective Co.

## ADJUDICATION

DITTER, District Judge.

Plaintiff brought a malpractice action against a doctor who was insured by the defendants. A verdict greater than the policy limits having been recovered, the doctor assigned to plaintiff whatever claim he might have as a result of alleged negligence on the part of his insurers in failing to join a third-party defendant.

After a trial without a jury, I make the following:

## FINDINGS OF FACT

1. Plaintiff was a citizen of the Commonwealth of Massachusetts at the time suit was instituted.

2. Defendant, Security Insurance Group, [hereinafter "Security"] is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business in that state.

3. Defendant, Medical Protective Company, [hereinafter "Medical"] is a corporation organized and existing under the laws of the State of Indiana with its principal place of business in that state.

4. In 1958, Israel Abrams, while under the care of Dr. Benjamin Lipshutz in the Albert Einstein Medical Center—Southern Division, received a transfusion of incompatible blood resulting in his death.

5. Milton Mazer was appointed Administrator of the Estate of Israel Abrams, deceased.

6. The legal action of Mazer v. Lipshutz, Civil Action No. 25,749,[1] was a medical malpractice case arising out of this incident.

7. At the time of the operation on Israel Abrams, Dr. Lipshutz carried two insurance policies to protect him from loss for malpractice.

8. One policy was with the New Amsterdam Casualty Company (now Security Insurance Group) and the other with the Medical Protective Company of Fort Wayne, Indiana.

9. The policy with New Amsterdam (Security) insured Dr. Lipshutz for liability for malpractice with a limit of liability for each claim in the amount of $40,000., and imposed upon the company the duty to defend suits brought against Dr. Lipshutz.

10. The policy with Medical Protective insured Dr. Lipshutz for liability for malpractice with a limit of liability for each claim in the amount of $10,000. and imposed upon it the responsibility to defend suits against Dr. Lipshutz and to retain legal counsel for that purpose.

11. On December 30, 1958, plaintiff instituted suit against Dr. Lipshutz (C. A. No. 25,749).

12. Security and Medical Protective undertook to defend the claim against Dr. Lipshutz in Civil Action No. 25,749.

13. Security and Medical Protective designated E. Walter Helm, III, Esquire, a member of the Philadelphia bar, as counsel to represent Dr. Lipshutz, and Mr. Helm entered his appearance for Dr. Lipshutz on January 28, 1959.

14. On January 30, 1959, an answer was filed by Mr. Helm.

15. Counsel for Mazer negotiated a settlement with the Insurance Company of North America, the insurance carrier for Albert Einstein Medical Center, in the amount of $60,000.

16. In return for the above settlement, Mazer executed a release and covenant not to sue the hospital, its agents and employees. Mazer reserved the right to make claims against certain doctors, including Dr. Lipshutz, the surgeon, and Dr. Peter Chodoff, the anethesiologist under whose direction the blood was given to decedent.

17. There was no evidence as to when Dr. Lipshutz, Security, Medical Protective, or their attorney, E. Walter Helm, III, Esquire, became aware of the settlement between Mazer and Albert Einstein.

18. On January 30, 1961, E. Walter Helm, III, Esquire, withdrew his appearance for Dr. Lipshutz and ceased to be employed by Security in connection with Mazer v. Lipshutz, Civil Action No. 25,749.

---

1. 31 F.R.D. 123 (E.D.Pa.1962), rev'd in part, 327 F.2d 42 (3rd Cir. 1964) ; 360 F.2d 275 (3rd Cir. 1966), cert. denied, 385 U.S. 833; 87 S.Ct. 72, 17 L.Ed.2d 68 (1966).

19. At no time from the commencement of litigation in Civil Action No. 25,749 until January 30, 1961, did Security, Medical Protective, Dr. Lipshutz, or their counsel file a motion to join Albert Einstein Medical Center as a third-party defendant.

20. In federal court actions, a decision by an attorney as to the joinder of a third-party defendant is a matter of tactics in the overall management of a case.

21. At the time of the original lawsuit, Local Rule 19(a) of the United States District Court for the Eastern District of Pennsylvania provided that joinder of third-party defendants had to be achieved within six months from date the defendant's answer was filed.

22. On November 29, 1961, defendant Lipshutz filed a motion to join Albert Einstein Medical Center as a third-party defendant. This motion was denied as being untimely.

23. Trial of the case commenced on January 8, 1962, before the Honorable Joseph S. Lord, III, and a jury.

24. The jury set plaintiff's damages in the amount of $89,318, and on October 21, 1966, judgment was entered against Dr. Lipshutz in that amount.

25. Security and Medical Protective have paid the sum of $50,000., the face amounts of the two policies, plus interest and costs in the amount of $7,082.89, to the administrator of the estate of Israel Abrams. Of the original judgment, $39,318. was not covered by Dr. Lipshutz's malpractice insurance.

26. Plaintiff is the assignee of the rights of the estate of Dr. Lipshutz[2] as against Security and Medical Protective, by virtue of a written assignment.

## DISCUSSION

In this case, plaintiff is proceeding on what amounts to a res ipsa loquitur theory of professional liability. Briefly stated, plaintiff contends:

(1) The verdict recovered against Doctor Benjamin Lipshutz exceeded his insurance coverage;

(2) Had Albert Einstein Medical Center been joined as a third-party defendant when suit was first started against Doctor Lipshutz, there could have been a judicial determination that the Medical Center and Doctor Lipshutz were joint tort feasors, a result made impossible by the absence of joinder;

(3) If Albert Einstein Medical Center and Doctor Lipshutz had been adjudged joint tort feasors, the $60,000 settlement paid by the Medical Center to plaintiff would have been considered a payment on account of the damages assessed by the jury, $89,328., and the difference, $29,318. would have been within Doctor Lipshutz's liability policy limits. In this event, there would have been no personal liability on the part of Doctor Lipshutz;

(4) The unfortunate result for Doctor Lipshutz, which might have been avoided had the Medical Center been joined, was caused by the negligence of E. Walter Helm, III, Esquire, the attorney retained by the insurance companies to conduct Doctor Lipshutz's defense.

 The law of Pennsylvania seems to be well settled:[3] If a litigant wishes to take advantage of a settlement payment by another party who may also have been at fault, that party must be joined as a third-party defendant so there can be a judicial determination of joint tort feasor status: Davis v. Miller, 385 Pa. 348, 123 A.2d 422 (1956); Mazer v. Lipshutz, 360 F.2d 275 (3rd Cir. 1966), cert. denied, 385 U.S. 833, 87 S. Ct. 72, 17 L.Ed.2d 68 (1966). It does not follow, however, that an attorney is negligent merely because he fails to join all persons whom a jury could find to have been joint tort feasors.

 Here, the defendants presented the testimony of F. Hastings Griffin, Jr., Esquire, whose qualifications to give testimony as an expert witness on legal

---

2. Dr. Lipshutz died during the pendency of C.A. No. 25,749, and the action continued against his executrix as substituted party.

3. It is also criticized. See Griffin v. United States, 353 F.Supp. 324, 328 (E.D.Pa.1973).

practice in Philadelphia from 1958 to 1961, were conceded by the plaintiff. Responding to a hypothetical question, Mr. Griffin stated that in his opinion the failure to join the Medical Center as a third-party defendant did not constitute a lack of the attainment or skills commonly practiced and exercised by attorneys of ordinary skill and capacity.[4] Mr. Griffin explained that decisions as to joining a third-party defendant require the exercise of judgment. He said joinder creates two potential problems in Federal actions. First, the possibility that a jury may impose liability against an original defendant only because it knows of no other way to impose liability on the third-party defendant which it, the jury, considers really to be responsible. Second, the joinder of a third-party defendant brings into the case a third lawyer against whom counsel for the original defendant may be required to contest a variety of issues. For these reasons, Mr. Griffin concluded that third-party defendants should not be joined unless an attorney is sure his client will benefit from that joinder.

In the case at bar, there was no showing that the failure to join the Medical Center was not a conscious exercise of judgment by Mr. Helm, as contrasted with an oversight. An informed judgment, even if subsequently proven to be erroneous, is not negligence.

In addition, a decision to join Albert Einstein Medical Center might well have been predicated upon knowledge of its settlement with plaintiff. There was no evidence presented to me that either the defendants or their counsel knew of the Medical Center's payment—much less that any of them knew in time to join the Medical Center within the six months period then allowed by Local Rule 19(a). If neither the defendant insurance companies nor their attorney, Mr. Helm, were aware of the settlement, the plaintiff's whole theory of negligence collapses.

It is black letter law that in an action for negligence the party alleging lack of due care has the burden of proof. Here, the plaintiff has offered only a bad result as proof that an attorney was negligent. In contrast, the defendants have presented evidence indicating that there are many factors which influence an attorney's decision as to whether or not a third-party should be joined. Under the circumstances, I must find that plaintiff has failed to meet the burden the law imposes upon him.

## CONCLUSIONS OF LAW

1. This court has jurisdiction.

2. There is no presumption that an attorney has been guilty of a want of care, arising merely from a bad result. To the contrary, an attorney is presumed to have discharged the duties of his representation until the opposite has been made to appear.

3. The failure to join a third-party defendant does not create an inference that an attorney has been negligent.

4. Plaintiff presented no evidence that Security, Medical Protective or their attorney, E. Walter Helm, III, Es-

---

4. Plaintiff objected to this question on the grounds that allowing it to be answered would invade the province of the fact finder. This objection was overruled and correctly so. Although it is true as a general statement of the law that a witness will not be permitted to give an opinion as to the ultimate fact in issue, this rule is not followed where the matters involved are beyond the knowledge of ordinary laymen. For example, in Norton v. Railway Express Agency, Inc., 412 F.2d 112 (3rd Cir. 1969) it was held that an expert should be allowed to testify as to the proper way to deliver a barrel of meat. In Weisman v. Sauder Chevrolet Co., 402 Pa. 272, 167 A.2d 308 (1961), it was held that not all laymen know the safety measures that should be followed in the towing of an automobile. In Reardon v. Meehan, 424 Pa. 460, 227 A.2d 667 (1967), an expert was permitted to testify about the way a rug would curl on a basement floor. It makes no difference that this case was being tried by a judge without a jury. Obviously, not all judges are experts in all tactical matters which may pertain to all law suits.

quire, knew of the settlement between Albert Einstein Medical Center and the plaintiff.

5. Plaintiff has failed to meet his burden of proof that the defendants, Security and Medical Protective, or their attorney, E. Walter Helm, III, Esquire, were negligent in their handling of the defense of the malpractice action against Doctor Benjamin Lipshutz, Mazer v. Lipshutz, Civil Action No. 25,749.

6. Judgment should be entered for the defendants.