**FLYING DIAMOND CORPORATION, a corporation, Plaintiff-Appellant,**

v.

**PENNALUNA & CO., INC., a/k/a Jerry T. O'Brien, Inc., a corporation, J. T. O'Brien, a/k/a Jerry T. O'Brien, Myrna R. Scott, First National Bank, Wallace, Idaho, a National Banking Association, George W. Zeller, Seeberg Investment Company, William Campbell, and Dorothy Brainard, Defendants-Appellees.**

No. 76–3761.

United States Court of Appeals, Ninth Circuit.

Nov. 20, 1978.

708

Michael E. McNichols (argued), Orofino, Idaho, for plaintiff-appellant.

C. Dean Little (argued), LeSourd, Patten, Fleming & Hartung, Seattle, Wash., for defendants-appellees.

Before WRIGHT and GOODWIN, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

The Flying Diamond Corporation (FDC) has appealed from a summary judgment in favor of Jerry T. O'Brien, Inc., d/b/a Pennaluna & Company, and Jerry T. O'Brien individually (collectively referred to as

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

"Pennaluna"), and First National Bank of Wallace, Idaho, now known as First National Bank of North Idaho (First National Bank), guarantors of endorsements on stock certificates issued by FDC. In its complaint FDC alleged fraud, conversion, negligence and breach of warranty on guarantees of signatures and endorsements by appellees. On cross-motions for summary judgment, the district court dismissed appellant's complaint and granted appellees affirmative relief, holding that (1) FDC's negligence was the proximate cause of any loss it suffered by reason of the transfer of unauthorized certificates with forged endorsements, and (2) both parties were guiltless of intentional wrong and FDC's conduct having occasioned the loss it must stand the consequences. We affirm.

### Factual Background

FDC is a publicly held Utah Corporation engaged primarily in oil and gas development and livestock and real estate activities. Its stock is traded on the over-the-counter market. The American Stock Transfer Company (AST) was a Utah corporation which acted as a transfer agent and registrar for FDC from the fall of 1970 to June 20, 1973. Pennaluna is an Idaho stock brokerage company with offices in Washington and Idaho.

As transfer agent for FDC, AST had blank stock certificates which included facsimile signatures of FDC's president and secretary. AST was instructed to complete the certificates only when registering transfers or directed by FDC. At some time unknown to the parties AST and its president, comptroller, director and major shareholder, Jay Miller, appropriated FDC stock certificates, filled them in, forged the endorsements of the persons shown as the registered owner, and affixed counterfeit guarantees of endorsement signatures to unauthorized shares worth approximately three quarters of a million dollars.

In June, 1973, FDC became suspicious. Following an audit, AST was terminated as transfer agent. FDC brought suit against AST, Miller and others and obtained an injunction requiring them to turn over all stock records and certificates. FDC engaged First Security Bank of Utah (First Security) to act as its transfer agent.

In October, 1973, William L. Campbell Jr. met Jerry T. O'Brien by chance at the Spokane Airport and requested O'Brien to check the market on FDC stock. O'Brien did so, and the following day Campbell arranged for O'Brien to sell 6,000 shares of FDC stock. The certificates delivered by Campbell did not bear the name or signature of Campbell and made no reference to him. O'Brien made no inquiry of Campbell relating to the certificates. Pennaluna's guarantees of endorsement signatures were placed on the certificates and Pennaluna obtained guarantees of endorsements from the First National Bank.

Pennaluna sent the certificates to AST for registration of transfer. Receiving no response, Pennaluna phoned FDC and was informed that First Security was the new transfer agent. On November 7, First Security mailed new FDC certificates to Pennaluna in completion of the registration of transfer. Pennaluna and First National Bank guaranteed the endorsements, and the new certificates were mailed to the buying brokers.

On November 2, 1973, Robert Anderson, an attorney retained by FDC to litigate the claims against AST, was informed by an SEC agent that Jay Miller had been arrested in Spokane and the police had seized two brief cases. The brief cases contained certificates similar to those negotiated by Campbell to Pennaluna and what appeared to be a receipt from Campbell for the certificates. On November 7 Anderson went to Spokane, examined the contents of the brief cases, and interviewed Spokane police officers. He did not, however, report the results of his investigation to FDC or First Security until November 28.

On November 15, 1973, Campbell again requested Pennaluna to sell 15,000 shares of FDC stock. Pennaluna and First National Bank again guaranteed the endorsements; and Pennaluna mailed the stock certificates to First Security for registration of transfer.

On November 28, First Security registered transfer of the certificates, issued new certificates, and mailed them to Pennaluna. On the same day the assistant to the president of FDC learned from Anderson of the arrest of Miller and the contents of his brief cases. First Security was then instructed by FDC by telephone not to transfer any certificates bearing the numbers found in the Miller brief cases.

Pennaluna received the new certificates on November 30, endorsed them and transferred them to the new buyers. On December 3, FDC, in reviewing the transfer records of First Security, discovered the registration of the transfer of the certificates to Pennaluna. The assistant to the president of FDC then telephoned O'Brien that FDC had reason to believe the certificates were invalid. Thereafter FDC notified Pennaluna and the buying brokers that it would not recognize the new certificates as valid.

FDC registered transfer of 6,100 shares of the new FDC certificates issued in the name of Pennaluna. The remaining new certificates in Pennaluna's name, representing 14,900 shares, were either returned to Pennaluna by the buying brokers, held by FDC when presented for transfer, or had not been presented for transfer.

*Proceedings in the District Court*

This action was commenced on February 15, 1974, to determine the respective rights and liabilities of FDC, Pennaluna, First National Bank, and other parties not involved in this appeal. The new certificates returned to Pennaluna or held by FDC were placed in the registry of the court. Both FDC and Pennaluna sought possession of the certificates, a declaration of their validity, and damages.

Following discovery, the parties executed a detailed stipulation of facts and made cross-motions for summary judgment. The district court incorporated the agreed facts in its findings of fact. No material facts were in dispute. The court denied appellant's motion for summary judgment and granted appellees' motion, dismissing FDC's complaint and holding that Pennaluna was entitled to possession of the FDC certificates.

*District Court's Conclusions of Law*

The district court concluded that there were no issues of material fact. The conclusions of law bearing upon the issues presented on this appeal include:

10. Based on its knowledge and notice and upon its failure to exercise due diligence, FDC had no right to rely on the warranties of Pennaluna under I.C. 28–8–306(1) and (5) and I.C. 28–8–312 as to the . . . certificates, and Pennaluna is not liable to FDC for breach of warranty.

14. Pennaluna at all times acted in good faith and observed commercially reasonable standards in the sale of FDC certificates.

19. FDC's trust and confidence in AST and its principal, Jay Miller, who abused that trust by placing, or causing the placing in the stream of commerce unauthorized FDC certificates bearing endorsement signatures and guarantees of signature which were unauthorized, was the proximate cause of any injury suffered by FDC on the sale of the 21,000 shares by Pennaluna; and therefore Pennaluna is not liable to FDC.

20. FDC's conduct (a) in entrusting its transfer agent and registrar, AST, with possession and control of blank FDC stock certificate forms bearing the facsimile authorizing signatures of FDC's officers, and (b) in failing to properly supervise AST's use of such certificates, constitutes negligence on the part of FDC as to all 21,000 shares.

22. FDC was negligent in failing to take adequate precautions based upon its knowledge of facts and circumstances prior to October 25, 1973.

24. The . . . certificates are genuine and effective to any person taking or dealing with them without notice of lack of authority of American Stock Transfer Company to issue said certificates. That FDC did not rely and had no right to rely on First National Bank's warranties under I.C. 28–8–312 as to the

. . . certificates. That First National Bank is not liable to FDC for breach of warranty because FDC had no right to rely.

26. That FDC, Pennaluna and First National Bank of Wallace, Idaho, are each guiltless of intentional wrong. However, the conduct, acts and omissions of FDC occasioned the loss, injury, or damage complained of by both FDC and Pennaluna, and it is a rule of equity that where one of two parties, both guiltless of intentional wrong, must suffer a loss, the one whose conduct, act or omission occasions the loss must stand the consequences. Therefore, Pennaluna and First National Bank of Wallace, Idaho, are not liable to FDC for the loss, injury, or damage complained of by FDC, and FDC is liable to Pennaluna for the loss, injury, or damage to Pennaluna.

### Issues on Appeal

This appeal presents the following issues:

(1) Whether an issuer of securities is entitled to summary judgment against those who guaranteed forged signatures and endorsements because of I.C. 28–8–312 warranties.

(2) Whether summary judgment may properly be granted when it is based on the findings of negligence as the proximate cause of loss.

### Warranties under I.C. 28–8–312

Section 28–8–312 of the Idaho Code[1] provides:

> *Effect of guaranteeing signature or indorsement.—*
>
> (1) Any person guaranteeing a signature of an indorser of a security warrants that at the time of signing
>
> (a) the signature was genuine; and
>
> (b) the signer was an appropriate person to indorse (section 28–8–308); and

(c) the signer had legal capacity to sign.

> But the guarantor does not otherwise warrant the rightfulness of the particular transfer.
>
> (2) Any person may guarantee an indorsement of a security and by so doing warrants not only the signature (subsection 1) but also the rightfulness of the particular transfer in all respects. But no issuer may require a guarantee of indorsement as a condition to registration of transfer.
>
> (3) The foregoing warranties are made to any person taking or dealing with the security in reliance on the guarantee and the guarantor is liable to such person for any loss resulting from breach of the warranties.

This statute is dispositive of the issues on appeal.[2] Subsection 3 sets forth two prerequisites—reliance and proximate cause—to the imposition of liability under this section. Section 8–312 does not impose strict liability on the guarantors of signatures and endorsements on securities. The district court made detailed findings of undisputed facts in support of its conclusions that FDC had no right to rely on the warranties of Pennaluna and First National Bank and that FDC's own conduct was the proximate cause of any loss it sustained.

### (a) Reliance

In rejecting FDC's claimed right of reliance, the district court found, *inter alia*, that (1) by July 5, 1973 FDC and its auditors had discovered that AST, Miller and others had issued approximately 220,862 of unauthorized shares of FDC; (2) FDC gave no instructions to its new transfer agent, First Security Bank, and its new registrar, Wallace Bank & Trust, to take any special precautions and none were taken prior to

---

1. I.C. 28–8–312 is a part of the Uniform Commercial Code—Investment Securities, I.C. 28–8–101 et seq.; U.C.C. 8–101 et seq.

2. Counsel have not cited, nor have we found, any case precisely in point factually. We see no useful purpose in analyzing and distinguish-ing the cases cited by the respective parties. We conclude, as did the district court, that under the undisputed facts FDC is not entitled under the statute to rely on the guarantees of Pennaluna and First National Bank.

December 3, 1973; (3) FDC did not call in its outstanding certificates and issue new certificates prior to October 25, 1973, when Pennaluna first sold FDC stock for Campbell; (4) Robert Anderson, Attorney for FDC, was informed on November 2 of Miller's arrest and the contents of his brief cases and on November 7 examined the contents of Miller's brief cases and interviewed Spokane police officers; (5) Anderson had a conversation with Melvin E. Leslie, house counsel for FDC, on November 9; but (6) neither Anderson nor Leslie informed employees of FDC, First Security Bank or Wallace Bank & Trust of the contents of the brief cases or other information obtained by Anderson until November 28, 1973; and (7) Pennaluna was not informed of the contents of the brief cases or other information obtained in Spokane until December 3, 1973.

■ FDC does not dispute these facts, but argues that it was entitled to the § 8–312 warranties because its second transfer agent, First Security, had taken the certificates in reliance on the guarantees. The parties stipulated that the manager of First Security had relied on the guarantees in accepting the certificates. But FDC had knowledge of facts which it had not disclosed to First Security. In asserting the transfer agent's reliance, FDC attempts to bootstrap to itself the agent's ignorance of these facts. When, however, an issuer fails to inform its agent of crucial facts within the issuer's knowledge, it may not claim the agent's reliance as its own. Notice to the transfer agent is notice to the issuer with respect to the functions performed by the agent. I.C. 28–8–406. Likewise notice to the issuer must be notice to the agent.

■ It is undisputed that prior to October 25, 1973, FDC had knowledge of the probable wrongdoings of AST and failed to take adequate precautions to protect itself. Prior to November 7, 1973, when FDC, through its transfer agent and registrar, registered transfer of the first unauthorized certificates, FDC, through its agent-attorney, had knowledge that duplicate certificates had been found in the possession of Miller. Even though the attorney failed to

report this information to FDC until November 28, FDC is charged with notice of the information received by its attorney at the earlier dates. See I.C. 28–1–201(25) and (27). Accordingly the district court properly concluded that under all the facts and circumstances known to it, FDC had reason to know that the certificates, the endorsement signatures thereon, and the guarantee of signatures were improper, and based "upon its knowledge and notice and upon its failure to exercise due diligence, FDC had no right to rely on the warranties" under § 2–312.

(b) Proximate Cause

The district court found FDC's loss was proximately caused by its trust and confidence in AST and its principal, Jay Miller, who abused the trust by placing or causing the placing in the stream of commerce unauthorized FDC certificates; its conduct in entrusting AST with possession and control of blank FDC stock certificate forms bearing facsimile authorizing signatures, and in failing to properly supervise AST's use of the certificates; and failure to take adequate precautions based upon its knowledge of facts and circumstances concerning the conduct of AST and Miller.

■ FDC argues that the unlawful actions of its transfer agent, AST, in placing unauthorized FDC stock certificates in the stream of commerce was unforeseeable and therefore, a break in the chain of causation. We cannot agree. Where a stock transfer agent is entrusted with blank certificates bearing facsimile authorizing signatures it is foreseeable that such certificates might illegally be transferred.

■ We agree with the district court that the proximate cause of any resulting loss was FDC's initial conduct entrusting AST with the blank certificates, combined with its subsequent failure to take proper precautions after learning of the unauthorized actions of its transfer agent. In other words, the proximate cause of FDC's loss was its own conduct, not that of Pennaluna and First National Bank in guaranteeing the signatures and endorsements on the stock certificates.

Since FDC failed to meet the prerequisites to recovery under I.C. 28–8–312, reliance and proximate cause, Pennaluna and First National Bank may not be held liable for any loss resulting from their warranties of the signatures and endorsements on the unauthorized stock certificates.

### Summary Judgment

 FDC challenges the summary judgment in favor of Pennaluna and First National Bank on the ground that the question of negligence should have been submitted to the factfinder. Although questions of negligence are usually reserved for the factfinder, summary judgment is proper where the facts are undisputed and only one conclusion may reasonably be drawn from them. Negligence then becomes a matter of law. See *Yellowstone Pipe Line Co. v. Kuczynski*, 283 F.2d 415, 419 (9 Cir. 1960).[3] This is such a case. Only one conclusion may be drawn from the actions of FDC. The case was a proper one for summary judgment in favor of appellees.

AFFIRMED.

---

**3.** See also *Bland v. Norfolk and Southern Railroad Co.*, 406 F.2d 863, 866–67 (4 Cir. 1969), where the court considered the applicability of summary judgment to negligence claims and concluded that summary judgment is proper in the unusual case where "there is nothing to be tried". As the district court noted in a hearing on applications for reconsideration of his conclusions, this case was in effect "a trial on a stipulated record. There is nothing to weigh, there is no credibility involved".