GANS, Curtis, G., Appellant,

v.

MUNDY, James F. and The Law Firm of Raynes, McCarty, Binder & Mundy.

No. 84–1541.

United States Court of Appeals,
Third Circuit.

Argued March 26, 1985.

Decided May 31, 1985.

Patrick T. Ryan (argued), Drinker, Biddle & Reath, Philadelphia, Pa., for appellant.

H. Robert Fiebach (argued), Stephen A. Ritt, Jr., Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for appellee.

Before ALDISERT, Chief Judge, and SLOVITER and MANSMANN,* Circuit Judges.

* Honorable Carol Los Mansmann, formerly of    the United States District Court for the Western

**OPINION OF THE COURT**

ALDISERT, Chief Judge.

This appeal from an award of summary judgment in favor of a law firm and one of the firm's partners on a claim of legal malpractice requires us to decide whether, in moving for summary judgment, appellees were obligated to offer expert evidence on the professional standard of care and whether the district court properly adjudicated the case as a matter of law. We conclude that the district court committed no error and we therefore affirm.

## I.

This malpractice action tried in diversity under Pennsylvania law stems from an underlying claim of personal injuries made by Curtis G. Gans as the result of an accident on October 20, 1977. Gans was then an employee of the National Railroad Passenger Corporation (Amtrak). He and others suffered personal injuries while commuting to work on a bus owned and operated by Amtrak when that bus struck the rear of a bus owned and operated by the South Eastern Pennsylvania Transportation Authority (SEPTA). Gans retained appellees—James F. Mundy and the law firm of Raynes. McCarty, Binder & Mundy—to represent him in his claim.

The appellees filed a law suit against Amtrak but not against SEPTA. Thereafter, Gans returned to work and sustained another injury on November 2, 1978. Settlement conferences pertaining to the bus accident followed, at which time Gans was offered $12,500. He was not satisfied with this offer. Later he expressed dissatisfaction with the Mundy firm, terminated his relationship with it, and obtained successor counsel. Gans's successor counsel amended the original complaint by adding a second count of negligence against Amtrak based on appellant's second injury sustained on November 2, 1978. The case proceeded into a two-week trial that resulted in a defense verdict on both counts. Gans then sued his original law firm and

James F. Mundy on the basis of legal malpractice. The district court entered summary judgment in favor of the law firm. Gans appeals.

## II.

On appeal Gans raises four issues: that appellees committed legal malpractice by (1) failing to make SEPTA a party in the original litigation; (2) failing to keep appellant advised about the progress of his case; (3) advising him that his claim against Amtrak was worth more than Amtrak's settlement offer which caused him to reject the offer; and (4) failing to bring a second action against Amtrak based on Gans's second alleged injury. Throughout Gans's argument runs the theme that genuine issues of material fact existed that should have been resolved by a jury.

■ Our standard of review of the district court's award of summary judgment is well settled:

On review the appellate court is required to apply the same test the district court should have utilized initially. Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The nonmovant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt.

*Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976) (footnote omitted), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). And, of course, we review the record to determine whether the district court properly concluded that "no genuine issue as to a material fact remain[ed] for trial, and that the moving party [was] entitled to judgment as a matter of law." *Id.*

## III.

Under Rule 56, Federal Rules of Civil Procedure, the moving party has the "bur-

District of Pennsylvania, now a member of this court, sitting by designation.

den of showing the absence of a genuine issue as to any material fact...." *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1969). Rule 56(e) requires that "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response ... must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." F.R.Civ.P. 56(e).

■ This court has held that "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981). We also have emphasized that "summary judgment has been characterized as a 'drastic remedy' ... and that courts are to resolve any doubts as to existence of genuine issues of fact against the moving parties ...." *Id.* (citations omitted). In those negligence actions where the evidence is in dispute, questions of breach of duty and causation appropriately are resolved by the trier of fact. However, "although questions of negligence are usually reserved for the factfinder, summary judgment is proper where the facts are undisputed and only one conclusion may reasonably be drawn from them." *Flying Diamond Corp. v. Pennaluna & Co.*, 586 F.2d 707, 713 (9th Cir.1978). In such an instance, determination of negligence becomes a matter of law. *Id.*

■ The parties agree that Pennsylvania malpractice law governs the substantive aspects of this case and the panel is unanimous in the statement of relevant controlling precepts of substantive law. Elements of this tort under Pennsylvania law are "(1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of damage to the plaintiff." *Schenkel v. Monheit*, 266 Pa.Super. 396, 399, 405 A.2d 493, 494 (1979) (quotation omitted). The standard of care to which an attorney must adhere is meas-

ured by the skill generally possessed and employed by practitioners of the profession. *See Denardo v. Carneval*, 297 Pa. Super. 484, 444 A.2d 135 (1982). "[A]n attorney is presumed to have discharged the duties of his representation until the opposite has been made to appear." *Mazer v. Security Insurance Group*, 368 F.Supp. 418, 422 (E.D.Pa.1973), *aff'd mem.*, 507 F.2d 1338 (3d Cir.1975). Under *Mazer*, an attorney's considered decision involving at a minimum the requisite exercise of "ordinary skill and capacity," and which is an "informed judgment," does not constitute malpractice. An attorney's conscious exercise of such judgment, "even if subsequently proven to be erroneous, is not negligence.... There is no presumption that an attorney has been guilty of a want of care, arising merely from a bad result." *Id.*

### IV.

■ Initially, we must address an issue raised at oral argument that appellees, as the parties moving for summary judgment, were required to include in the moving papers expert evidence as to the standard of care. This issue arises primarily because of our decision in *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474 (3d Cir.1979), where we affirmed a district court's involuntary dismissal of a legal malpractice action. The action was dismissed on defendant's motion after plaintiff's counsel represented that no expert testimony on the standard of care was forthcoming. On appeal we stated:

[A]lthough the judge may be competent to evaluate defendant's conduct in light of the relevant standard of care, the actual standard of care itself is a question of fact that is best left to the presentation of evidence with the opportunity for cross-examination and rebuttal.... [W]e conclude that ... expert testimony is required in bench trials of legal malpractice claims except where the matter under investigation is so simple, and the lack of skill so obvious, as to be within the range of the ordinary experience and

comprehension of even non-professional persons.

*Id.* at 481. In a post-argument letter to the court, appellant characterizes a movant's burden under Rule 56 in light of *Lentino:* because a movant must establish the absence of genuine issues of material fact, *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608, and because the standard of care in a legal malpractice suit is a question of fact to be established by expert testimony, *Lentino,* 611 F.2d at 481, it follows, appellant reasons, that a movant under Rule 56 must introduce expert evidence. We reject this characterization.

### A.

Our holding in *Lentino* simply cannot fairly be characterized as applying to a *defendant's* motion under Rule 56. In this respect, we are not writing on a clean slate. In *Zimmer Paper Products, Inc. v. Berger & Montague, P.C.,* 758 F.2d 86 (3d Cir. 1985), we confirmed that the *Lentino* expert evidence requirement devolves upon the plaintiff, not the defendant. In *Zimmer* we affirmed the award of summary judgment in favor of defendant attorneys in a legal malpractice action. In moving for summary judgment, the defendants did not present expert evidence on the standard of care, nor did the plaintiff offer such evidence in opposing the motion. We stated:

> In order to establish negligence, [the plaintiff] bears the burden of proving three elements: (1) a duty or standard of care; (2) a breach of that duty; and (3) causation.... The district court's grant of summary judgment to defendants must be affirmed if the evidence of negligence is too speculative to establish any material issue of fact.
>
> . . . .
>
> *We must view the evidence [the plaintiff] has presented in light of the absence of a proffer of any standard of care in the legal profession.*

*Id.* at 93–94 (emphasis supplied). We now must measure this summary judgment proceeding against the teachings of *Zimmer Paper Products, Inc.* and *Lentino.*

### B.

Here the appellees averred in an affidavit in support of their motion for summary judgment that:

7. Defendants affirmatively decided not to bring any action against SEPTA because, to the best of defendants' knowledge, information, and belief, based upon the facts related to defendants by the injured employees, there was no good ground to support any such action against SEPTA.

. . . .

23. Despite defendants' diligent efforts and the exercise of skill and knowledge by defendant Mundy and defendant firm on Gans' behalf, Gans wrote to defendant Mundy on November 10, 1979, requesting the withdrawal of defendants from further representation of Gans.

. . . .

29. Defendants had originally chosen not to bring a second claim against Amtrak based upon the November, 1978 accident. It was then defendants' judgment, from an analysis of all of the operative facts and two independently prepared medical reports, that Gans had merely re-aggravated his original injury while at work in November, 1978. It was also defendants' determination that Amtrak's liability, with respect to the November, 1978 incident, was tenuous at best. Gans was injured while at work performing his job, which was one that did require some lifting. Thus, from all of the above facts, to the best of defendants' knowledge, information and belief there was no good ground to support a second action against Amtrak.

App. at 45–46, 55, 57–58.

By alleging that their decisions relative to the litigation were informed judgments, based on "the exercise of skill and knowledge," appellees necessarily alleged that they were not negligent in arriving at their judgments. *See Kubrick v. United States,* 435 F.Supp. 166, 188 (E.D.Pa.1977) (error

of judgment not medical malpractice if judgment is the product of the skill and knowledge required by the standard of care). We, therefore, cannot conclude that appellees failed to aver that their conduct comported with the applicable standard of care, a standard of care defined at minimum as congruent with their own conduct. Undeniably, this characterization of the standard of care is tautological and not particularly useful in assessing appellees' actions and inactions. However, the appellant decided—for whatever reason—not to controvert with expert evidence the appellees' averments regarding the standard of care.

### C.

As stated above, the party moving for summary judgment has the ultimate burden of showing the absence of a genuine issue as to any material fact. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608. But once the appellees averred facts and alleged that their conduct was not negligent, a burden of production shifted to the appellant to proffer evidence that would create a genuine issue of material fact as to the standard of care. "[T]he burden shifts to the opposing party when the [Rule 56] movant presents evidence which would require a directed verdict in his favor at trial." *Forms, Inc. v. American Standard, Inc.*, 546 F.Supp. 314, 321 (E.D.Pa.), *aff'd mem.*, 725 F.2d 667 (3d Cir.1983); *see also* 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 56.13[3] at 56–479 (2d ed. 1983). Because *Lentino* requires the plaintiff to establish the standard of care with expert testimony in order to avoid an involuntary dismissal or a directed verdict, the burden devolved upon Gans to oppose appellees' factual averments with expert evidence demonstrating that the appellees' conduct failed to meet the appropriate standard of care. Plaintiff failed to discharge this critical burden. Accordingly, he did not create a factual dispute as to the applicable standard of care.

### V.

We now consider appellant's remaining contentions *seriatim* in light of the other material facts of record. Noting that "the district court's grant of summary judgment to defendants must be affirmed if the evidence of negligence is too speculative to establish any material issue of fact," *Zimmer*, 758 F.2d at 86, 94 (3d Cir.) (citations omitted), we are persuaded that the district court properly adjudicated this case as a matter of law. Furthermore, in the absence of expert evidence establishing a standard of care, against which we can assess appellees' conduct and find that conduct to be lacking, we apply the strict exception reaffirmed in *Lentino* and will find negligence only if "the lack of skill is so obvious, as to be within the range of the ordinary experience and comprehension of non-professional persons." 611 F.2d at 480 (citing *Smith v. Yohe*, 412 Pa. 94, 194 A.2d 167 (1970)). Our review of the record convinces us that evidence of appellees' negligence is too speculative to establish any material fact and that appellees' actions did not—at any time—reveal an obvious lack of skill.

### A.

First, the record demonstrates that the decision not to sue SEPTA did not constitute malpractice as a matter of law. Amtrak was sued under the Federal Employers Liability Act (FELA). FELA cases rarely present more than the single question of whether negligence of the employer "played any part, however small, in the injury or death which is the subject of the suit." *Rogers v. Missouri Pacific Railroad*, 352 U.S. 500, 508, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) (citing *Tiller v. Atlantic Coast Line Railroad Co.*, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943)). Liability on the part of a common carrier tortfeasor will be found, under the Act, so long as the employer's negligence played "any part, even the slightest in producing the injury for which damages are sought." 352 U.S. at 506, 77 S.Ct. at 448 (citing *Coray v. Southern Pacific Co.*, 335 U.S. 520, 69

S.Ct. 275, 93 L.Ed. 288 (1949)). "It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes...." 352 U.S. at 506, 77 S.Ct. at 448; *see also Pehowic v. Erie Lackawanna Railroad,* 430 F.2d 697 (3d Cir.1970).

The record reveals numerous factors pointing to Amtrak's liability. The Amtrak claims agent and an attorney for Amtrak admitted to Amtrak's liability during the course of settlement negotiations, and it appears that the subsequent discovery proceedings confirmed and corroborated these admissions. Moreover, the theory of negligence attributed to SEPTA was that the SEPTA bus's brake lights were not functioning. Yet, the undisputed evidence shows that the driver of the Amtrak bus knew both that the brake lights were not functioning before the collision and that the roadway was wet. Given the express language of the Federal Employer's Liability Act, the case law interpreting it, and other factors discussed above, here appellees made an informed, strategic decision not to bring any action against SEPTA on behalf of Gans. We are persuaded as a matter of law that the appellees did not violate the standard of ordinary skill and knowledge to which the legal practitioner must adhere.

### B.

■ We also reject appellant's second contention that appellees failed to keep appellant advised about the progress of his case. The original affidavit filed by Mundy contains nine of the letters sent by Mundy to Gans that were directed at keeping him appraised of all important developments and matters relating to his case. Absent additional evidence of record—and there is none—it was not error to conclude as a matter of law that appellees adequately apprised appellant of the various aspects of his case.

### C.

Gans also contends that the appellees were somehow responsible for not settling the case against Amtrak. In his complaint, Gans originally charged that Mundy affirmatively had refused to settle Gans's case against Amtrak for $12,500. In his first affidavit in these summary judgment proceedings, Gans reversed this position and admitted that it was he who had turned down the settlement offer, but contends that this decision was based on Mundy's advice that Gans's claim was worth more. We do not believe that this creates an issue of fact that would alter the question of legal malpractice. The record indicates that Mundy urged Gans to accept the $12,500 offer that Magistrate Naythons originally suggested at a pretrial conference. This amount was greater than the offer previously communicated to Gans by Amtrak and only slightly less than the demand previously requested of Amtrak by Mundy's office.

### D.

■ Finally, Gans contends that he was harmed by Mundy's decision not to sue Amtrak a second time subsequent to the alleged second injury. We have examined the record and inasmuch as a reasonable judgment was made by the lawyer that the second incident was only an aggravation of injuries sustained in the first accident, the failure to sue does not constitute legal malpractice. The elements of proximate causation and violation of the requisite standard of care are absent. Additionally, the statute of limitations had not run on this issue and a second suit could have been filed. In any event, after obtaining successor counsel, we note that Gans did press this second claim and lost.

### VI.

Under these circumstances, we conclude that the district court did not err in determining (1) that appellees committed no legal malpractice during the time they represented Gans, and (2) that they cannot be charged with any liability for events occurring subsequent to the hiring of successor counsel.

The judgment of the district court will be affirmed in all respects.

SLOVITER, Circuit Judge, dissenting.

My disagreement with the majority concerns whether summary judgment was proper on Gans' claim that his lawyers (collectively referred to as Mundy) were negligent in failing to join SEPTA as a defendant in Gans' suit.

Gans' claim on the merits was not complex. He was a passenger of an Amtrak bus that collided with a SEPTA bus on October 20, 1977. Since Gans was patently not responsible for any part of his injuries, either Amtrak or SEPTA or both were responsible. Mundy, his lawyer at the time, proceeded on the theory that Amtrak was liable, and indeed there was ample basis for that belief. However, during discovery on August 27, 1979, the Amtrak bus driver testified that the SEPTA bus had no brake lights at all, that the SEPTA driver had indicated to him that he knew his brake lights did not work, and that the turning signal lights of the SEPTA bus were not functioning prior to the chain of events that led to the accident. This testimony, according to Gans, should have alerted his lawyers that there was a potential claim against SEPTA, and should have led them to join SEPTA as an additional defendant while there was still an opportunity to do so.

As all experienced trial lawyers know, the basis for proceeding against all possible defendants is to prevent a situation where the factfinder attributes liability to a defendant that is not before it. That is apparently what happened in this case. When the case against Amtrak was tried by Mundy's successor, the jury found against plaintiff and for Amtrak on liability. Gans filed a motion for a new trial contending that the jury verdict was clearly against the weight of the evidence. In denying that motion, the district court referred to a number of facts that would have permitted the jury to find that Amtrak was not negligent, including "more importantly, whether the rear lights on the SEPTA bus were operating properly, prior to the accident." Since SEPTA had not been named as a defendant, the jury was not able to assess liability against it on that basis, and we will never know whether the district court would have permitted a verdict to stand that found neither Amtrak nor SEPTA liable.

The issue before us, and that was before the district court, was whether Gans' claim that Mundy was negligent for failing to sue SEPTA should have been permitted to go to the jury. I submit that it should have.

In support of his motion for summary judgment, Mundy filed only his own self-serving affidavit in which he alleged that "[d]efendants affirmatively decided not to bring any action against SEPTA because, to the best of defendant's knowledge, information, and belief, based upon the facts related to defendants by the injured employees, there was no good ground to support any such action against SEPTA." In Gans' affidavit in opposition, Gans averred, "I am without information as to any reason why defendants did not bring an action against SEPTA. At some point in the proceedings, it was learned that the SEPTA vehicle was operating without proper lights and, therefore, there would be a basis for a claim that SEPTA was at least, in part, responsible for the accident." Thereafter, an associate of Mundy, Alan M. Feldman, filed an affidavit setting forth the reasons why he did not join SEPTA, primarily the clear liability of Amtrak and the complications and delay in trial that would have ensued had SEPTA been joined. While Mundy and Feldman might have convinced a jury that their actions were not negligent, it was error for the district court to draw this conclusion on summary judgment.

In the first place, defendants' affidavits are factually deficient in that they fail even to allege that their decision not to join SEPTA conformed to the standard of care in the community. In *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474 (3d Cir.1979), we stated that the determination

of legal malpractice, like determinations of malpractice in other professions, requires not only an evaluation of professional skill and judgment, but also of a standard of care which is related to common professional practice. We stated that ordinarily an expert witness is "necessary to establish the specific standard of care and to assist the jury in its determination of defendants' conformity to the relevant standard." *Id.* at 480.

The majority concludes that because the plaintiff would have the burden to prove malpractice at trial, plaintiff had the burden of producing expert evidence to counter the motion for summary judgment. This conclusion simply does not follow, and confuses the relevant law as to the propriety of summary judgment with the plaintiff's burden to prove his case at trial.

Under Fed.R.Civ.P. 56(c), the moving party must demonstrate that there are no genuine issues of material fact and that s/he is entitled to judgment as a matter of law. Here, since Mundy was the moving party, he bore the burden to establish that he was entitled to judgment. The opposing party need only bring forth sufficient evidence to create a genuine issue of material fact with respect to any of the defendant's crucial allegations in order to defeat the motion. Where the moving party does not allege facts sufficient to support entitlement to judgment, the motion cannot be granted even if the opposing party offers no response at all. *See Adickes v. Kress & Co.*, 398 U.S. 144, 153–60, 90 S.Ct. 1598, 1606–09, 26 L.Ed.2d 142 (1970); *Maldonado v. Ramirez*, 757 F.2d 48, 50 (3d Cir. 1985); *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781, 790 (3d Cir.1978).

Although the majority gives lip service to the proper burdens to be placed on the parties when a motion for summary judgment has been filed, the majority fails to apply them properly in this case. The majority relies on defendants' affidavits alleging that the decision not to sue SEPTA was a tactical decision based on the attorneys' informed decision. However, even "informed decisions" may not be up to the relevant professional level, and on this record we do not know what that level was. Underlying the majority's decision is its inference that the allegedly "informed decision", self-characterized by the lawyers themselves, satisfied the relevant standard of care. Such an inference is unsupportable on this record, particularly in the context of summary judgment. *See, e.g., Continental Insurance Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). Ordinarily therefore, the issue is one for trial.

In the second place, I see nothing in this court's recent decision in *Zimmer Paper Products, Inc. v. Berger & Montague, P.C.*, 758 F.2d 86 (3d Cir., 1985), on which the majority relies, to support the grant of summary judgment here. In *Zimmer*, the allegation of negligence made by a class member against class counsel was that counsel failed to give adequate notice of a settlement. After substantial discovery, the district court granted summary judgment. On appeal, we noted that "Zimmer has not adduced any evidence to suggest that class counsel's hiring of three professional firms to print, prepare and mail the notice was itself below the legal profession's standard of care with regard to class notice." At 94. Thus, we affirmed, agreeing that "the evidence of negligence is too speculative to establish any material issue of fact." *Id.* Significantly, however, in that case, it was apparent from the record that the procedure for notice employed by counsel "was customary and court-approved." *Id.* at 93.

The facts in the case before us are far different from those in *Zimmer*. Here, the decision not to join SEPTA as a potential defendant was made notwithstanding a plausible basis for finding SEPTA was indeed negligent. It is simply not "speculative" to think that the failure to join a party who may be negligent and to permit the statute of limitations as to the party to run might be a basis for a finding of legal malpractice. Since the record is devoid of any evidence to show whether such a decision conforms to the standard of care in the community, and Mundy failed to pro-

duce such evidence, he was not entitled to summary judgment.

Finally, I am distressed that the majority has chosen to include, out of context, the statement in *Mazer v. Security Insurance Group,* 368 F.Supp. 418, 422 (E.D.Pa.1973), *aff'd* 507 F.2d 1338 (3d Cir.1975), that "an attorney is presumed to have discharged the duties of his representation until the opposite has been made to appear." In *Mazer,* the issue of legal malpractice was tried before the judge as factfinder, and the statement was made immediately after the court found that plaintiff had failed to meet his burden of proof. There was expert evidence at the trial introduced by defendants supporting a judgment for defendant. The court did not apply any "presumption" to support a motion for summary judgment on the basis of defendant's own affidavits. Attorneys are no different than any other professionals and have a duty to conform to the accepted standard of professional practice. I know of no basis for establishing a presumption that they have done so.

I believe that the majority's result is contrary to *Lentino,* distinguishable from *Zimmer,* and in violation of the basic principles governing summary judgment motions. For the foregoing reasons, I respectfully dissent.