Michael C. DUBAN, Individually and as Trustee for Saul and Gertrude Duban U/T/D March 6, 1972, and Roberta Duban as Custodian for Laureen Duban and Melissa Duban, Minors, on behalf of themselves and as a Class, Plaintiffs,

v.

DIVERSIFIED MORTGAGE INVESTORS, Ray C. Wilson, Julius Jensen, III, M. J. Wallace, Gordon E. Emerson, Jr., George M. Lovejoy, Jr., James V. Rice, Blancke Noyes, Bayard Henry, William Royce Moore, William E. Palmer, Bernie O. Snoddy, R. M. Norris, Diversified Advisers, Inc., Continental Investment Corp., Hornblower & Weeks-Hemphill, Noyes, Incorporated, Price Waterhouse & Co., Sherman Simanowitz and Morton Meadow, Defendants.

Anne MEYER, on behalf of herself and as a Class, Plaintiff,

v.

DIVERSIFIED MORTGAGE INVESTORS, Ray C. Wilson, Julius Jensen, III, M. J. Wallace, N. W. Wallace, Gordon E. Emerson, Jr., George M. Lovejoy, Jr., James V. Rice, Blancke Noyes, Bayard Henry, William Royce Moore, William E. Palmer, Bernie O. Snoddy, R. M. Norris, Diversified Advisers, Inc., Continental Investment Corp., Hornblower & Weeks-Hemphill, Noyes, Incorporated, Price Waterhouse & Co., Defendants.

Abraham WECHSLER, on behalf of himself and all others similarly situated, Plaintiff,

v.

DIVERSIFIED MORTGAGE INVESTORS, Continental Investment Corp. and Diversified Advisers, Inc., Defendants.

Myra GROSS, Plaintiff,

v.

DIVERSIFIED MORTGAGE INVESTORS, Ray C. Wilson, Julius Jensen, III, M. J. Wallace, N. W. Wallace, Gordon E. Emerson, Jr., George M. Lovejoy, Jr., James V. Rice, Blancke Noyes, Bayard Henry, William Royce Moore, William E. Palmer, Bernard O. Snoddy, R. M. Norris, Diversified Advisers, Inc., Continental Investment Corp., and Price Waterhouse & Co., Defendants.

Nos. 74 Civ. 3035(LPG), 77 Civ. 368(LPG), 75 Civ. 1745(LPG), and 75 Civ. 1806(LPG).

United States District Court, S. D. New York.

April 3, 1980.

Snow, Becker, Klaris & Krauss by Charles Snow, New York City, for plaintiffs Michael C. Duban and Roberta Duban, Individually, as Trustees, as Custodians, and on behalf of the Class; Anne Meyer, on behalf of herself and on behalf of the Class.

Kass, Goodkind, Wechsler & Gerstein by Stuart D. Wechsler, New York City, for plaintiff Abraham Wechsler, on behalf of himself and all others similarly situated.

Levy & Erens by Howard A. Tullman, Chicago, Ill., for defendants Diversified Mortgage Investors.

Dewey, Ballantine, Bushby, Palmer & Wood by Hugh N. Fryer, New York City, for defendant Price Waterhouse & Co.

Lumbard & Phelan, P. C. by Eliot Lumbard, New York City, for defendants Hornblower & Weeks-Hemphill, Noyes, Inc., Sherman Simanowitz and Martin Meadow.

Wolf, Popper, Ross, Wolf & Jones by Donald N. Ruby, New York City, for plaintiff Myra Gross, on behalf of herself and on behalf of the Class.

Gatson, Snow & Ely Bartlett by Peter M. Saparoff, Boston, Mass., Burns, Jackson, Miller, Summit & Jacoby by Gary L. Maddock, New York City, for Gordon E. Emerson, Jr., Bayard Henry, Bernie O. Snoddy, Julius Jensen, III, Reginald M. Norris, James V. Rice, William E. Palmer, Lee Palmer, Executrix of the Estate of William E. Palmer, George M. Lovejoy, Jr., William Royce Moore, Blancke Noyes, Jansen Noyes, Jr., Executor of the Estate of Blancke Noyes, M. J. Wallace and N. W. Wallace.

GAGLIARDI, District Judge.

*Preliminary Statement*

Plaintiffs, purchasers of stock of Diversified Mortgage Investors ("DMI") commenced these actions alleging violations of Section 10(b) of the Securities and Ex-

change Act of 1934 and Rule 10(b)5 promulgated thereunder. Defendant DMI is a real estate investment trust; other defendants are Diversified Advisers, Inc., the investment advisor of DMI; Continental Investment Corp., a financial holding company and the parent of DMI and Diversified Advisors, Inc.; various individual directors, trustees and officers of these corporate defendants; Price Waterhouse and Co., a certified public accounting firm which was the independent auditor of DMI at the time of the alleged violations, and Hornblower & Weeks-Hemphill, Noyes, Inc. ("Hornblower"), a registered broker-dealer.

Plaintiffs, purporting to represent classes of purchasers of DMI stock, allege that defendant were responsible for the preparation and distribution of reports, statements, and various other public documents which omitted material facts and included material misstatements. As a result of these activities, plaintiffs claim that they were induced to purchase the stock at inflated prices and suffered losses when the price of the stock declined. The above-captioned cases were consolidated for pre-trial purposes and after the filing of voluminous motions, resulting in three decisions by this court, extensive discovery and intensive negotiations, the parties have now entered into a single stipulation of settlement, filed with the court on June 19, 1979 covering all four actions. This court's order of June 20, 1979 conditionally certified the actions, solely for purposes of settlement, as a single class action comprised of all purchasers of DMI stock who purchased such stock between January 1, 1971 and March 31, 1975. The order further provided that notice would be sent to all potential members of the settlement class advising of the pendency of the action, the proposed terms of settlement, and procedures for filing claims, objecting to the settlement, or requesting exclusion from the class. The notice would advise of a hearing scheduled for October 17, 1979, at which objectors would be given an opportunity to speak in opposition to the settlement. Two class members filed objections, and as a result of further negotiations, the proposal of one objector for an amendment to a term of settlement was incorporated into the settlement agreement, requiring supplementary notice and a second hearing which was held on December 4, 1979. The court now certifies the class for the purpose of settlement, and having considered the terms of the proposed settlement, as well as opposition filed on behalf of the remaining single objector, approves the amended settlement as fair, adequate and reasonable. The court also approves the payment of $152,101.39 as attorneys' fees and disbursements, to be distributed in accordance with the schedule set forth below.

### The Litigation

The actions will be described briefly for the purpose of providing relevant background to the discussion of the settlement which follows. Each of the original complaints alleged that the defendants were responsible for the preparation and dissemination of various corporate reporting forms, documents, and press releases which contained false, inaccurate and misleading information about the financial condition of DMI particularly with respect to the adequacy of loan reserves, loan delinquency rates, estimates of predicted earnings and the nature and safety of loans. The *Duban* action was originally brought on behalf of the plaintiff individually and was later amended to seek establishment of the case as a class action; the remaining cases sought class certification immediately. In response to each complaint the defendants moved for dismissal, contending, *inter alia*, that plaintiffs had failed to state a claim with particularity as required by Rule 9(b) Fed.R.Civ.P. By its decision dated February 25, 1977, this court granted defendants' motions with leave to plaintiffs to replead. Defendants responded to the subsequent amended complaints by motions to dismiss. On September 13, 1977 this court once again granted in part and denied in part defendants' motions, with leave to plaintiffs to replead. The defendants have moved to dismiss what are now the third amended complaint in *Duban* and the second amend-

ed complaints in the remaining actions. Settlement negotiations began before another decision on defendants' motions was rendered.

Several significant factors, according to plaintiffs' counsel, influenced their decision to advise their clients to enter into settlement negotiations. As the brief summary of this litigation illustrates, the plaintiffs encountered difficulties in their attempts to allege with the requisite particularity the specific wrongful acts engaged in by defendants. Although plaintiffs were confident that the amended complaints now before the court would satisfy the requirements of Rule 9, the defendants nonetheless had again attacked the amended complaints with dismissal motions. Furthermore, prior decisions in this case indicated to plaintiffs that they would have a significant burden in pleading and proving the material facts, as well as defendants' knowledge of these facts. Plaintiffs also considered defendants' contentions that the plaintiffs' losses were attributable to a decline in the market, rather than due to defendants' misstatements or omissions. Plaintiffs concluded that the trial of the issues raised in the complaint would involve difficult and close questions of law and fact, and that their ability to prove their cases was uncertain. They determined, therefore, that it was in the best interests of the classes which they represent to secure the benefits of the proposed settlement, rather than to hazard the uncertainties of continued litigation. In light of the foregoing, plaintiffs' counsel entered into the stipulation of settlement submitted to this court for approval on June 19, 1979 which was later amended by agreement of the parties.

### The Proposed Settlement

The stipulation provides for a fund of $550,000 of which $500,000 will be contributed by DMI and $50,000 by Hornblower. DMI is responsible as well for all expenses of administration of the settlement, now estimated to be $200,000. DMI is entitled to deduct a sum not to exceed $25,000 from the settlement fund as reimbursement for administrative expenses. The stipulation further provides that plaintiffs' counsel may apply to the court for an award to cover fees and disbursements in an amount to be determined by the court, and to be deducted from the settlement fund. The balance of the settlement fund will be available for distribution to members of the plaintiff class who have not filed notices of exclusion and who have filed timely proofs of claim for losses suffered during the relevant period. Each approved claimant is then to receive a pro rata share of the settlement fund in accordance with a prescribed formula. The terms of the stipulation submitted to this court on June 19th, provided that seventy percent (70%) of the settlement fund is allocated for pro rata distribution to approved claimants who suffered losses arising from purchasers of DMI stock between December 6, 1973 and March 31, 1975, inclusive, with the remaining thirty percent (30%) of the fund allocated for distribution to those whose losses resulted from purchases between January 1, 1971 and December 5, 1973, inclusive. The settlement agreement provides that upon approval of the settlement, a judgment will be entered which

> forever discharg[es] all defendants in th[e] actions from any and all liability and from each and every claim, which has been or could have been asserted herein (including those which might have been asserted under any pendent jurisdiction of the Court) arising out of or in any way relating to acts, transactions and occurrences from January 1, 1971 through March 31, 1975, inclusive, and in any way relating to the pleadings and papers in these actions.

The first notice of settlement which was published and mailed to over 65,000 potential class members, instructed potential claimants who wished to participate in the settlement to file a proof of claim and release prior to October 29, 1979. The notice described the procedures for entering an appearance and filing objections by October 5, 1979 in order to participate in the October 17th hearing and for requesting an exclusion from the class by October 29th.

Upon receipt of the notice of settlement, Mellon Bank N.A., ("the Bank") filed a timely notice of intention to enter an appearance and to file objections to the proposed allocation formula. Between January 1, 1971 and December 5, 1973, the Bank or its nominees purchased 74,649 shares of common stock of DMI which it held in a fiduciary capacity. According to the notice of objection, the beneficiaries under the trust administered by the Bank incurred losses in excess of $457,000 when the DMI shares were sold. The Bank calculated that ultimately approximately $367,500 would be available for distribution to all shareholders, of which $110,250 or 30% would be allocated to those purchasing 9,851,441 shares during the period of the Bank's purchases. The Bank therefore urged a change in the formula to an equitable distribution regardless of the period of purchase. As a result of further negotiation, the parties agreed to incorporate the Bank's modification into the proposed stipulation of settlement. This court then entered an order directing new notice to all claimants who would be adversely affected by the modification, and further ordered a second hearing on December 4th. The second notice likewise provided for filing notices of objection or exclusion.

At the December 4th hearing, Levy and Erens, counsel for DMI recommended that 6,928 claimants, of the 8,822 who had filed prior to October 29, 1979, be allowed to participate in the settlement, if approved, that an additional 1100 be allowed subject to the claimants curing procedural defects, and that 794 be disallowed as not qualified for various reasons. Levy and Erens further reported that 434 claims had been filed late, between October 30th and November 30th. At the December hearing the court announced that it would consider the disposition of the late claims, filed prior to the second hearing date, in its decision on the settlement, and agreed with Levy and Erens that claims filed subsequent to that date be disallowed. On February 5, 1980 Levy and Erens reported that an additional twenty-one claims were filed between December 7th and January 22nd.

One additional objector, Mary Mayer, who purchased 200 shares of DMI stock in 1973, filed a notice of appearance prior to the October hearing. Although Mayer has withdrawn many of her initial objections to the settlement, she continues to urge the court to disapprove the settlement on the grounds that:

(1) The release and claim form circulated to the "class" violates due process. The rationale behind this charge is Mayer's observation that a putative class member is faced with a "Catch 22" situation requiring a choice between objecting and filing a claim;

(2) The settlement would bar related claims, such as a derivative suit by plaintiff stockholders who would seek reimbursement from the individual defendants, on behalf of the corporation for its losses caused by the acts of the individual defendants, directors and officers of the corporation whose wrongdoing occasioned these suits.

For the reasons set forth below, this court rejects the validity of the objections and holds that the settlement is fair, reasonable and adequate.

*Approval of the Settlement*

■■■ In evaluating whether a proposed settlement is "fair, reasonable and adequate," *West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1085 (2d Cir.), *cert. denied*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971) a court should consider, *inter alia*:

(1) The strength of plaintiff's case on the merits balanced against the amount offered in settlement;

(2) Presence of collusion in reaching a settlement;

(3) The reaction of members of the class to the settlement;

(4) The opinion of competent counsel;

(5) The stage of the proceedings and the amount of discovery completed.

3A Moore's *Federal Practice*, ¶ 23.80[4] at p. 23–521 (1979 ed.) *See also, Federman v. Empire Fire and Marine Ins. Co.*, [1975–76 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 95,-

418 (S.D.N.Y.1976), at p. 99,114; *In re National Student Marketing Litigation*, 68 F.R.D. 151 (D.D.C.1974). This court is well aware of the obstacles which plaintiffs faced if they were to prevail in this litigation, not the least of which was the initial pleading burden. The judgment of experienced counsel, who concede that the risk of litigation is substantial, is entitled to considerable weight. *Fielding v. Allen*, 99 F.Supp. 137, 144 (S.D.N.Y.1951). Therefore, although the amount recovered by the plaintiff class in the instant case is substantially less than the damages claimed in the complaint, that fact does not, in and of itself mean that the proposed settlement is grossly inadequate and should be disapproved. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974). *See also, id.*, n.2, and cases cited therein; *Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972); *West Virginia v. Chas. Pfizer & Co., supra*, 440 F.2d at 1085. The court, which has been actively involved in the course of this litigation for a period of approximately five years, has every reason to believe that the settlement reached was the result of good faith bargaining. See *Stull v. Baker*, 410 F.Supp. 1326, 1333 (S.D.N.Y.1976).

The fact that an overwhelming number of class members approved the settlement is also a factor which has some bearing on a court in its determination of the fairness of the settlement. *See Shlensky v. Dorsey*, 574 F.2d 131, 148 (3d Cir. 1978); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). Of approximately 9,000 claimants who filed claims, there were only two objectors, one of whom has now withdrawn its objection. In addition, the court has already mentioned the value which it has accorded the recommendation of counsel, whose competence and experience are set forth in the discussion of the application for fee allowances. And finally, but not of little significance, it is noteworthy that the settlement was reached after exhaustive discovery, and after the sufficiency of the plaintiffs' claims were tested by defendants' motions to dismiss. "The proponents of the settlement have, thus, established the factors which bring the presumption in favor of settlement into play." *Feder v. Harrington*, 58 F.R.D. 171, 175 (S.D.N.Y.1972).

Although the settlement achieved by the parties meets the accepted tests for the court's approval, and although there is a strong public policy favoring the approval of settlements reached after good faith negotiations between plaintiffs' and defendants' counsel, see *Robertson v. National Basketball Ass'n*, 72 F.R.D. 64 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 682 (2d Cir. 1977), this court would be remiss in its duty if it did not carefully consider the argument of the objector. *See Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 835 (9th Cir. 1976). Before turning to the objector's contentions, the court notes that Mayer was represented by counsel who was given and accepted the opportunity to participate in both hearings. In addition, the court requested additional briefs from counsel specifically addressed to the Mayer objections. Counsel for Mayer submitted a reply brief which has also been considered in arriving at this decision.

■ Mayer's first argument, which is a procedural objection, has two aspects. First, Mayer asserts that a procedure which requires her to file a claim and execute a release prior to the court's certification of the class or approval of the settlement is a due process violation. However, the following colloquy which occurred at the December 4th hearing resolves this issue.

"The Judge: Isn't the filing of the release or the effect of the release contingent upon the settlement being approved?

"Mr. Bader [counsel for Mayer]: It doesn't say so, your Honor.

"Mr. Tullman [counsel for DMI]: Absolutely.

"The Judge: It is contingent on that, and I don't think you will find a court in the country that won't vacate a release if anybody tried to enforce it under those circumstances."

■ Mayer also argues that the procedure was improper because she is required to file an objection prior to the hearing, but

will not be advised of the court's disposition of the objection prior to the deadline by which a claim and release must be filed. In short, Mayer argues that she must decide whether or not to file a claim and participate in the settlement before she learns of the court's decision with respect to her objections. The court finds the dilemma illusory and therefore concludes the argument is without merit. Although Mayer is opposed to the settlement in its present form, she would have lost nothing by filing a claim and executing a release in a timely fashion. If the settlement were approved as is now the case, she would not have been precluded from participating. Had the settlement been disapproved, all releases and claims would have been void, as has been discussed, *supra.* Finally, if the settlement had been modified as a result of Mayer's objection, the court would have ordered new notice to be sent to affected class members, as it did after it approved the Bank's modification, and would have provided an opportunity for class members to have acted accordingly. Although the court finds the objection insubstantial, if Mayer has not filed a claim and now chooses to do so, the court directs that she be allowed to participate in the settlement.

■ Mayer's final argument also has two aspects. She first contends that the settlement is unfair and inequitable because DMI has contributed the largest share of the settlement fund while the individually named defendants, the officers and directors of the corporation, contributed nothing. The claim is without merit. In evaluating the fairness of a settlement, this court must determine only that sufficient compensation is being paid to the class, and need not speculate as to the appropriate contribution of each defendant. *See Masterson. v. Pergament,* 203 F.2d 315, 330 (6th Cir.), *cert. denied,* 346 U.S. 832, 74 S.Ct. 33, 98 L.Ed. 355 (1953). As the court stated in *Percodani v. Riker-Maxson Corp.,* 50 F.R.D. 473 (S.D.N.Y.1970), "the release of noncontributing defendants through a settlement agreement is no reason for disapproving the compromise." (*Id.* at 477) (citation omitted). In the instant case, all of the defend-

ants have denied any liability for the acts charged, and have stated that they have agreed to settle the action only to avoid the continued expense of litigation. It is not the court's function, in evaluating a settlement, to substitute its own business judgment for that of the parties who worked out the settlement. *Levin v. Mississippi River Corp.,* 59 F.R.D. 353, 361 (S.D.N.Y.), *aff'd sub nom. Wesson v. Mississippi River Corp.,* 486 F.2d 1398 (2d Cir.), *cert. denied* 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973). In sum the court cannot question the wisdom of the corporation in choosing to pay the cost of settlement in order to finally terminate the litigation.

■ Mayer also argues that the court should disapprove the settlement because the releases which will be executed among the parties pursuant to the stipulation will bar subsequent derivative actions brought on behalf of the corporation to recover losses suffered by the corporation as a result of the allegedly wrongful acts of the officers and directors of DMI, individual defendants herein. In a recent Third Circuit case, *Shlensky v. Dorsey, supra,* 574 F.2d 131, objectors opposed a district court's approval of a settlement of a shareholder's derivative suit on the grounds that the settlement would bar, under the doctrine of *res judicata,* the continued litigation of certain defendants' liability in a suit pending in the District of Columbia. The court reasoned that the district court had taken into consideration the terms of the releases and their effect on the pending claims, and that the releases would be enforceable "even as to claims unknown at the time of the execution of the releases if that was their intended scope." *Id.* at 144. In affirming the district court's approval of the settlement, the Third Circuit stated:

We think, therefore, that the district court was not precluded from approving the settlement of the shareholder's derivative action because it included an agreement by the parties to release claims other than those pleaded in the complaint where it found, as it did here, that the

settlement as a whole was fair and reasonable. We think that the question of the actual effect of the general release on the District of Columbia suit is one to be resolved in that proceeding.

*Id.* at 144 (citations omitted). See also *Delahanty v. Newark Morning Ledger Co.*, 26 F.Supp. 327, 328–29 (D.N.J.1939). In the instant case, the court is asked to disapprove a settlement which is in all respects fair, based on the possible bar effect of the releases on a speculative future derivative action. Such an action has not been filed, although the objector has been aware of the allegedly wrongful conduct at least since January 1976 when she was one of the named plaintiffs in a derivative action filed in Massachusetts arising out of the same conduct [1]. The case is therefore distinguishable from *Herbst v. International Tel. & Tel. Corp.*, 72 F.R.D. 85 (D.C.Conn.1976), in which the district court disapproved a class action settlement which it found otherwise fair and reasonable because the terms provided for releases which would prevent derivative plaintiffs from seeking contribution from corporate directors in *pending* derivative actions. The objector asserts that the claims will not ripen until this settlement is approved. That statement, however, reveals that the objector may be contemplating an action against the current directors for approving the settlement which would probably not be barred. See *Wolf v. Barkes*, 348 F.2d 994 (2d Cir. 1965). The court concludes that it should not decline to approve the settlement before it on the possibility that a shareholder will bring a derivative action which *may* be barred by the doctrine of *res judicata*. The corporation approved the settlement and agreed to all terms, including the releases, because it determined the settlement to be in its best interests. The claims of several thousand shareholders will be satisfied by the settlement. The court need not speculate as to whether it would reach a different result if there were an action pending, *see Herbst, supra,* but concludes that the conjectures of Mayer are an insufficient basis on which to disapprove an otherwise satisfactory settlement.

*Attorneys' Fees and Expenses*

The three firms representing the plaintiff class have filed a joint application for fees and disbursements in the total amount of $165,000. In addition, the two firms representing the objector Bank have submitted an application for fees and disbursements to compensate for their efforts resulting in a modification in the distribution formula. The total application on behalf of these two firms is $6,206.87. The court will consider each set of applications *in seriatim*.

█ Attorneys who represent a successful class are entitled to recover fees and disbursements from the settlement fund. See *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975), *Mills v. Electric Auto-Lite*, 396 U.S. 375, 396, 90 S.Ct. 616, 627, 24 L.Ed.2d 593 (1970); *Fleischmann Distilling Corp. v. Maier Brewer Co.*, 386 U.S. 714, 719, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967). "The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorney, must be a calculation of the attorney's services in terms of the time he has expended on the case." *City of Detroit v. Grinnell*, 495 F.2d 448, 470 (2d Cir. 1974), *decision after remand* 560 F.2d 1093 (2d Cir. 1977). Such calculations are made "by multiplying the numbers of hours expended by each attorney involved in each type of work on the

---

1. In the Massachusetts action, *Mary Mayer and Albert Mayer v. Ray C. Wilson et al.*, (D.Mass., C.A. No. 76–1740–F), plaintiffs alleged that defendants, among whom were the same individuals named in the instant action, were guilty of various violations of the Federal Securities Laws, resulting in damage to the corporation. The court granted defendants' motion to dismiss the amended complaint due to plaintiffs' failure to comply with Rule 23.1 Fed.R.Civ.P. In addition, the court found that plaintiffs had failed to state a claim under either Section 10(b) of the Securities Exchange Act of 1934 or Section 206 of the Investment Advisers Act of 1940, thus mandating dismissal of the action on these alternative grounds as well. The plaintiffs did not appeal.

case by the hourly rate normally charged for similar work by attorneys of like skill in the area." *Grinnell, supra,* 560 F.2d at 1098. Counsel for the class have submitted detailed affidavits setting forth the time expended jointly over the course of nearly six years, commencing with the filing of the *Duban* action in 1974 totaling 1,137 hours up to October 15, 1979. The records include an allocation of the number of hours expended by each attorney in each firm who worked on the cases. The firms have calculated the normal non-contingent hourly charge of each attorney, ranging from $75.00 for an associate's time to $175.00 for a partner's. The attorneys have also provided an analysis of the work performed and a description of the experience and expertise of the counsel involved in order to assist the court in judging the reasonableness of the hourly total for each attorney. See *City of Detroit v. Grinnell, supra,* 495 F.2d at 471. The resulting "lodestar" for the total of all attorneys' time is $134,119.75. Counsel have also submitted a joint application for disbursements totaling $2,239.77 and for compensation for estimated additional time from October 15, 1979, to the conclusion of the settlement in the amount of $15,000.

The court accepts as reasonable the hourly fee for each attorney's work in light of the background and expertise of the firms, taking into account fees charged by comparable firms in the same location. The firms are entitled to be compensated for their disbursements. The $15,000 estimate for additional time, at an average of $125.00 per hour, would compensate counsel for 120 hours of work. This figure, however, appears somewhat excessive for services rendered in preparation for the second hearing and other work leading to the conclusion of the litigation. The court will accordingly grant an award of $10,000 for the estimated additional time.

■ Having arrived at a "lodestar" which is the actual total hourly compensation, the court may adjust that figure to reflect additional factors, such as the "risk" of litigation and benefits to the class. *See*

*City of Detroit v. Grinnell, supra,* 560 F.2d 1093; *Beazer v. New York City Transit Authority,* 558 F.2d 97, 100 (2d Cir. 1977), *cert. granted,* 438 U.S. 904, 98 S.Ct. 3121, 57 L.Ed.2d 1146 (1978). The "risk of litigation" takes into account the complexity of the issues, which would "ta[x] the ingenuity or skill of counsel." *City of Detroit v. Grinnell, supra,* 560 F.2d at 1101 (citation omitted). Although the case presented demanding challenges to counsel, the court does not believe the issues were so novel as to warrant additional compensation beyond the "lodestar." The size of the award to the class here, although acceptable to justify the court's approval of the settlement as fair, is not extraordinary. In any event, courts are warned not to be "unduly influenced by the monetary size of the class settlement or judgment." *Id.* at 1099. Furthermore, before making allowance for subjective factors "the court must be mindful that an attorney will receive an otherwise reasonable compensation for his time from the lodestar figure alone." *Id.*

■ In determining the appropriate fee, the court is mindful of two other factors. The settlement notice advised the class members that the attorneys would apply for fees not to exceed $165,000, to be deducted from the settlement fund, and the attorneys for the Bank have also submitted an application for fees and disbursements totaling $6,206.87. The petition of the Bank's counsel must be viewed in light of the resulting benefit to the class. Although counsel devoted relatively little time to this matter, having filed an objection and notice of appearance on October 5th, appeared at the hearing and negotiated with counsel, the results which counsel accomplished on behalf of certain members of the class, those purchasing prior to December 6, 1973, attest to counsel's skill. Accordingly, bearing all the aforementioned factors in mind, the court awards fees and disbursements as follows: the Bank's local counsel, Kelly, Drye and Warren, is awarded $900 in fees and $51.50 disbursements, and its general counsel, Reed, Smith, Shaw and McClay, is awarded $3,500 in fees and $1,290.37 dis-

bursements. Counsel for the class is awarded its lodestar figure of $134,119.75, plus $10,000 for estimated additional time and disbursements of $2,234.77. After the total fees and disbursements of $152,101.39 are deducted from the settlement fund, the balance shall be distributed to approved claimants.

As a final matter, the court orders that the 434 late claimants who filed between October 30th and November 30th, and the twenty-one who filed after December 4th, be allowed to participate in the settlement. Counsel responsible for complying with the notice requirements had obvious difficulty in locating all potential class members. It is apparent to the court that notices were delayed in reaching class members who had relocated. Accordingly, in the interest of fairness, these late claimants shall be permitted to participate.