758 F.2d 86
 53 USLW 2481, 1985-1 Trade Cases 66,531,
1 Fed.R.Serv.3d 454
 ZIMMER PAPER PRODUCTS INCORPORATED, Appellant,
v.
BERGER & MONTAGUE, P.C.; David Berger; Gross & Sklar
Associates; Warren Rubin; Rawle & Henderson; Avram G.
Adler; Marvin I. Barish; Arnold Levin; Howard J.
Creskoff; Kohn, Savett, Marion & Graf, P.C.; Harold Kohn;
Fine, Kaplan & Black, General Packaging Products, Inc.;
Melvin J. Schwartz Corporation, Inc., formerly Commercial
Card & Paper Company, Inc.; Anchor Paper Co.; and the Ajax
Paper Tube Company.
 No. 84-1368.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 15, 1985.
Decided March 22, 1985.
Rehearing and Rehearing In Banc Denied April 19, 1985.
 
 R. Stanley Lawton (argued), Donald G. Sutherland, Kyle E. Lanham, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., Bonnie Brigance Leadbetter, Flora L. Becker, Leadbetter & Becker, Philadelphia, Pa., for appellant.
 Bruce W. Kauffman (argued), John F. Smith, III, Alexandra D. Sandler, Anne Marie P. Kelley, Philadelphia, Pa., for Berger & Montague, P.C., et al.; Dilworth, Paxson, Kalish & Kauffman, of counsel.
 Arthur E. Newbold, IV (argued), Lisa M. Scottoline, Philadelphia, Pa., for Fine, Kaplan & Black, et al.; Dechert, Price & Rhoads, of counsel.
 Before ADAMS and WEIS, Circuit Judges, and HARRIS, District Judge*.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 The proper elements of notice to class members are a concern in almost every class action; consequently, the interrelated notice requirements of due process and Fed.R.Civ.P. Rule 23 have been frequently litigated. This case, however, raises the question of the adequacy of class notice in a novel context.
 
 
 2
 Zimmer Paper Products, Incorporated, a member of the plaintiff class in an antitrust action, has sued its own class counsel for a breach of fiduciary duty and negligence in failing to provide to it sufficient notice of the settlement of the action. Zimmer asserts that because it never received notice of the settlement, it failed to file a claim for its share, thereby losing approximately $250,000. In seeking to recover this amount, plus interest and attorney's fees, it advances two contentions: (1) that class counsel breached its fiduciary duty by not suggesting or undertaking more thorough notice procedures than the court ordered; and (2) that class counsel negligently carried out the notice procedure that was ordered.
 
 
 3
 Attorneys for the class provided notice of the settlement and of the necessity to file a claim in a traditional court-approved manner: by both first-class mail and publication in the Wall Street Journal. The district court in this action determined that compliance with these approved notice procedures did not constitute a breach of fiduciary duty and further concluded that plaintiff had made no showing of negligence in class counsel's execution of the notice. Consequently, the district court granted defendants summary judgment. 586 F.Supp. 1555. Because we agree that no negligence was shown, and because we are reluctant to find a breach of fiduciary duty on the basis of a violation of notice requirements that would effectively be imposed retroactively, we will affirm the judgment of the district court.
 
 I.
 
 4
 Defendants were class counsel in an antitrust class action. Glassine and Greaseproof Paper Antitrust Litigation. Plaintiff, Zimmer Paper Products, was one of more than 1500 plaintiff class members in the litigation. When the lawsuit was settled, Zimmer did not file a claim for its share of the settlement proceeds. It alleges that it failed to assert such a claim because class counsel did not provide adequate notice.
 
 
 5
 Two separate notices were sent to class members in the course of the antitrust litigation, one in June and the other in November of 1981. Both notices were carried out in the same court-approved manner. On April 10, 1981, after proposed settlements had been reached with three defendants, the court ordered that "Notice of Class Action and Proposed Partial Settlement" be mailed to all plaintiff class members by June 1, 1981, and be published in all regional editions of The Wall Street Journal.[1] Zimmer admits to receiving six copies of the June 1 notice.
 
 
 6
 The second notice, mailed November 10, 1981, and also published in the Wall Street Journal, informed class members of proposed additional settlements and, most importantly, of a plan for distribution of the settlement fund. Zimmer asserts that it did not receive any of the November 10th notices mailed to it, and although it did receive the Wall Street Journal, the notice that was contained in it apparently did not come to its attention.
 
 
 7
 Both sets of notices were approved by the court, and were carried out in the same manner--by individual first-class mail and publication. Class counsel retained experienced, professional firms to prepare and mail the notices, as is customarily done. A list of potential class members was supplied to Provcor Services, Inc., a company that regularly engages in class action notice preparation. The list included Zimmer. Provcor placed the class members' names and addresses, and the deviations therefrom,[2] on a computer list. Its list also included Zimmer.
 
 
 8
 Provcor then verified the accuracy of the list, and printed gum-backed mailing labels. VPI Reproduction Center, Inc., and its subcontractor, Fischler's Printing & Office Products, printed the notices and prepared them for mailing. VPI, Fischler, and Provcor worked together, through Bartholomew Milano, a VPI employee, to ensure that the notices were properly printed, folded, addressed, and mailed. VPI made photocopies of the mailing labels. The photocopies show that seven labels were addressed to Zimmer for each mailing. Provcor then mailed the notices by first-class mail.[3]
 
 
 9
 Zimmer admits to receiving six of the seven June 1, 1981 notices, which were mailed according to the above-described procedure. When this same procedure was followed on November 10, 1981, Zimmer insists that it received none of the seven notices. Since other plaintiff class members responded by filing claims, it is apparent that at the very least many of the notices were received. Indeed, defendants point out that both Zenith Specialty Bag Co. (whose mailing label appeared on the page preceding Zimmer's), and Zorn Packaging, Inc. (whose mailing label was on the same page as Zimmer's) received the November 10th notice and filed claims.
 
 
 10
 On August 20, 1982, after the district court had approved the claims filed by class members, the settlement fund was fully distributed, on a pro rata basis. Approximately nine months later, in May, 1983, Zimmer filed this action, charging defendants with a breach of their fiduciary duties and with negligence in failing to ensure that Zimmer was notified. Zimmer argued before the district court that the notice should have been conducted by certified mail, return receipt requested, rather than by first-class mail; that class counsel had a duty to conduct some follow-up procedures upon learning of the 12% response rate to their November 10th notice; that class counsel should have created a reserve contingency fund for late claims; and that class counsel negligently carried out the mailing.
 
 
 11
 Defendants moved for summary judgment, and on August 2, 1983, the district court granted partial summary judgment. The court held that the defendants had no duty to send notices by certified or registered mail, to employ follow-up procedures, or to establish a reserve contingency fund for late claims.[4] The court was guided by its conclusion that "first class mailing is sufficient to satisfy the notice requirements of Federal Rule of Civil Procedure 23(a); moreover, first class mailing comported with the court's order as to the mode of notice to be utilized." App. at 372.
 
 
 12
 The district court did not dismiss the entire case at that time, but allowed plaintiff to go forward in order to determine through discovery whether the mailing procedure itself was negligently administered. After extensive discovery, the district court awarded defendants summary judgment on the remaining issue, concluding that Zimmer had produced no evidence that would support a finding of negligence. This appeal followed.II.
 
 
 13
 Zimmer advances two principal contentions in this Court. First, it contends that, given the particular circumstances of this case, class counsel breached its fiduciary duty in suggesting and conducting a court-approved notice procedure that utilized only first-class mail and publication. Second, it maintains that even if the court-ordered notice is legally sufficient to meet counsel's fiduciary obligations, there are material issues of fact regarding negligence in the execution of the notice procedure that preclude summary judgment. We address these arguments in order.
 
 A.
 
 14
 It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed.R.Civ.P. 23 and the due process clause. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173-77, 94 S.Ct. 2140, 2150-52, 40 L.Ed.2d 732 (1974); Walsh v. Great Atlantic & Pacific Tea Co., 726 F.2d 956, 962-64 (3d Cir.1983); Cayuga Indian National v. Carey, 89 F.R.D. 627, 632-33 (N.D.N.Y.1981). Rule 23, which effectively incorporated the due process standards suggested by the Supreme Court in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 318, 70 S.Ct. 652, 657, 659, 94 L.Ed. 865 (1950), establishes varying notice requirements, depending on the nature of the class action and the content of the notice. See Fed.R.Civ.P. 23 Advisory Committee Notes to 1966 Amendment ("mandatory notice pursuant to subdivision (c)(2), together with any discretionary notice which the court may find it advisable to give under subdivision (d)(2), is designed to fulfill requirements of due process"). This rule is in keeping with Mullane's directive that notice "must be such as is reasonably calculated to reach interested parties" and "apprise [them] of the pendency of the action." Mullane, 339 U.S. at 314, 318, 70 S.Ct. at 657, 659. Rule 23(d)(2) governs most notices during the pendency of a class action and confides the manner of notice to the district court's discretion, subject to due process requirements. Rule 23(e), which also commits the form of the notice to the court's discretion, mandates notice of a settlement and of a claimant's entitlement to share in it, such as the November 10th notice at issue here. A higher notice standard is established by Rule 23(c)(2). That rule, however, applies only to notice of class certification in (b)(3) class actions, advising potential class members of their right to exclude themselves from the class. Rule 23(c)(2) mandates "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[5]
 
 
 15
 First-class mail and publication consistently have been considered sufficient to satisfy the notice requirements of Rule 23(d)(2) and Rule 23(e) for advising class members of a proposed settlement and of their right to file claims. E.g., Walsh, 726 F.2d at 962-64 (pre-and post-settlement notice by first-class mail and publication "clearly adequate" under Rule 23(d)(2) and 23(e)); In re Gypsum Antitrust Cases, 565 F.2d 1123, 1125-27 and n. 5 (9th Cir.1977) ("fair and reasonable," under 23(d)(2), to proceed by mailing claim notices to last addresses of potential class members and by publication); Alliance to End Repression v. City of Chicago, 561 F.Supp. 537, 548 (N.D.Ill.1982) (notice of settlement by first-class mail and publication "fair and adequate" under 23(e)); McCubbrey v. Boise Cascade Home & Land Corp., 71 F.R.D. 62, 65 (N.D.Cal.1976) (notice of proposed settlement and right to file a claim for a portion of settlement sent by first-class mail).
 
 
 16
 Indeed, first-class mail and publication regularly have been deemed adequate under the stricter notice requirements, not applicable here, of Rule 23(c)(2). Eisen v. Carlisle & Jacquelin, 417 U.S. at 173-75, 94 S.Ct. at 2150-51; Steiner v. Equimark Corp., 96 F.R.D. 603, 614 (W.D.Pa.1983) (individual first-class mail is "best notice practicable" under 23(c)(2)); Trist v. First Federal Savings & Loan Association, 89 F.R.D. 1, 2 (E.D.Pa.1980) (individual mail to last known address meets 23(c)(2) standard); Piel v. National Semiconductor Corp., 86 F.R.D. 357, 375 (E.D.Pa.1980) (first-class mail); Oneida Indian Nation v. New York, 85 F.R.D. 701, 709 (N.D.N.Y.1980) (first-class mail and publication in New York Times ).
 
 
 17
 The two leading Supreme Court cases on notice, Mullane and Eisen, both prescribed first-class mail to identifiable individuals together with publication. Eisen, 417 U.S. at 176, 94 S.Ct. at 2151; Mullane, 339 U.S. at 318, 70 S.Ct. at 659. While the Supreme Court may not have intended this particular procedure to be taken as a hard and fast rule,[6] it has nevertheless become common practice to send notice by first-class mail and publication. Our Court favors "maximum notice" in class action contexts, but the cases establishing that policy themselves required only first-class mail and publication. See Girsh v. Jepson, 521 F.2d 153 (3d Cir.1975); Greenfield v. Village Industries, Inc., 483 F.2d 824 (3d Cir.1973).
 
 
 18
 Seeking to avoid the import of these cases, Zimmer argues that regardless of compliance with due process, Rule 23, a court order, and the general practice of class action notice, class counsel is personally liable for a breach of its fiduciary duty in not doing something more. This Court's discussion of notice in Greenfield v. Village Industries, Inc., supra, at 832, however, suggests that the bounds of a class counsel's fiduciary duty with respect to notice are determined in large part by due process and Rule 23 requirements. In a paragraph explicitly devoted to "not the least important of the fiduciary duties shared by counsel and the court," we quoted liberally from both Mullane and Rule 23. Id. Consequently, in determining whether an attorney for a class has breached a fiduciary duty, we should afford considerable weight to the fact that he or she has done all that is generally done, all that due process requires, and all that the court ordered.
 
 
 19
 Zimmer suggests that class counsel's fiduciary duty encompassed a responsibility to effect notice by certified mail, return receipt requested, and to undertake follow-up procedures after the first notice was sent. It cites no case to support this proposition. Indeed, the only decision we have found that even discusses the relative merits of first-class and certified mail in the notice context expressly reaffirms the adequacy of first-class mail. See Cayuga Indian Nation v. Carey, 89 F.R.D. at 632-33. The bounds of fiduciary duty are undoubtedly not easy to define,[7] but certainly we must be guided by the fact that the practice here alleged to breach such duties is a customary one, and has been approved, after careful judicial scrutiny, not only in this case but in legions of others. If class counsel in this case have breached their fiduciary duties, attorneys throughout the country who have complied with court orders and a Supreme Court-approved notice procedure may well be subject to malpractice lawsuits by anyone who alleges that he or she did not receive notice of the opportunity to file a claim.
 
 
 20
 These untoward nationwide results need not follow, Zimmer argues, because of the peculiar nature of this case. Specifically, Zimmer points to the large amount of the settlement (over twenty million dollars), the relatively small number of class members (approximately 1550), and what it characterizes as an uncommonly low response rate to the November notices (approximately 12% of the class filed claims to share in the settlement). While each of these factors might be relevant at the time the notice procedure is being considered and implemented in the first instance, we do not believe that they support Zimmer's assertion of malpractice after the notices have been sent out.
 
 
 21
 First, Zimmer has not offered sufficient evidence to make these figures particularly meaningful. It notes, for example, that the average claim was approximately $12,000, but fails to provide a median figure. If there were several large claims involved, as is often the situation in such actions, the median figure might well be considerably lower. The record here shows that several settlement shares in the antitrust litigation were in excess of $1.5 million, while other claims were as low as $21.28. App. at 56-73. It is certainly reasonable to assume that most of those who did not respond might have been concentrated in the lower rather than the higher end of these figures.
 
 
 22
 Second, the case law does not make clear what role, if any, the amount of money involved should play in ascertaining whether the notice is reasonably calculated to apprise class members of the action. In Eisen, where the cost of individual notice to class members was so considerable with respect to the potential recovery as effectively to end the suit as a class action, the Court nonetheless required individual notice, stating "there is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs." Eisen, 417 U.S. at 176, 94 S.Ct. at 2151. Yet, Zimmer suggests that we can tailor the notice requirements of fiduciary duty to the pocketbook of a particular plaintiff--itself.
 
 
 23
 Moreover, the large amount of money involved and the nature of the class in some respects weigh against Zimmer's argument. Zimmer is not an unsophisticated consumer, but a corporation that did considerable business with the defendants named in the antitrust litigation. It received the June 1st notice, and thus was aware that the suit was pending, that half the defendants had already settled, and that Zimmer, which had done a large volume of business with the defendants, probably had a substantial stake in the matter. It would not be unreasonable, in such a situation, for a corporation such as Zimmer to notify its counsel, so that developments in the action might be followed.
 
 
 24
 These considerations gain significance in light of the fact that the class as a whole consisted primarily of business entities as distinguished from individuals. The presumed expertise of such a class in legal matters suggests that first-class mail would be "reasonably calculated ... to apprise interested parties" of the action. Mullane, 339 U.S. at 314, 70 S.Ct. at 657. More elaborate steps, such as certified mail, have been used in situations where class members may be presumed to be less aware of a notice's legal ramifications. See, e.g., Commonwealth of Pennsylvania v. Local Union 542, 555 F.Supp. 1109, 1110 (E.D.Pa.1982) (court ordered certified mail for notice to individual class members in employment discrimination case); Kyriazi v. Western Electric Co., 527 F.Supp. 18, 39 (D.N.J.1981) (same); Vuyanich v. Republic National Bank of Dallas, 521 F.Supp. 656 (N.D.Tex.1981), vacated on other grounds, 723 F.2d 1195 (5th Cir.1984) (same).
 
 
 25
 Finally, the 12% response rate does not appear to be determinative. Although at first glance this response rate appears low, there has been considerable debate over whether or not it is in fact low. While the defendants have cited studies by Herbert Newberg, author of a treatise on class actions, to demonstrate that a 12% rate is in line with response rates in similar settlements, Zimmer has come forward with nothing to suggest that the rate is uncharacteristically low. See H. Newberg, Newberg on Class Actions Sec. 2695, Feb. 1984 Current Supp., Table I at CS7-57 to CS7-62. Since it is the plaintiff's burden to establish that a fiduciary duty has been breached, we believe this lack of evidence to be damaging to Zimmer's reliance on the 12% rate. Cf. Lentino v. Fringe Employee Plans, Inc., 611 F.2d 474, 480 (3d Cir.1979) (plaintiff in malpractice case must establish a standard of care in profession in order to show a breach).
 
 
 26
 Thus, while Zimmer's figures convey a superficially appealing argument, they do not stand up under inspection. Before approving any distribution of settlement proceeds to class members, the district court undoubtedly considered such factors. If it were dissatisfied it would have ordered further notice procedures. In the future, district courts should carefully review the specific characteristics of a class action to determine whether more thorough notice procedures are justified by the circumstances. We do not believe, however, that the district court in this antitrust litigation abused its discretion in approving notice by first-class mail and publication. Once a court, whose discretionary order is presumptively valid, has properly sanctioned such a notice procedure, moreover, a complaining party faces a standard at least as high as abuse of discretion in seeking to show malpractice by counsel who followed the court's order. There is no basis in the record for saying that the circumstances here support any such conclusion.
 
 
 27
 We do not hold today that first-class mail and publication will always suffice, either under a due process or a fiduciary duty analysis. Indeed, given the large sums involved and the low response rate, it might have been preferable for the district court in the antitrust litigation to have required certified mail or follow-up procedures.[8] We hold only that in this case, where the procedure employed was customary and court-approved, where there was no suggestion before the district court that a different type of notice be employed, and where the plaintiffs have offered little support for the proposition that more was required, class counsel cannot be said to have breached their duties. Like the Second Circuit, we are loath to apply new notice requirements retroactively. Supermarkets General Corp., 490 F.2d at 1186.
 
 B.
 
 28
 Zimmer also insists that the district court erred in granting summary judgment on its negligence claim. It urges that even if the notice procedure employed does not itself constitute a breach of fiduciary duty, class counsel is liable if it conducted the notice procedure in a negligent manner. The district court concurred in principle with this contention, and therefore allowed Zimmer to conduct substantial discovery to determine whether in fact class counsel had been negligent in preparing and mailing the notifications. Because Zimmer was unable to show any evidence of negligence causing Zimmer to fail to receive notice, the district court awarded defendants summary judgment. App. at 377-86. We agree that Zimmer's extensive discovery has failed to develop any material issue of fact regarding class counsel's negligence.
 
 
 29
 In order to establish negligence, Zimmer bears the burden of proving three elements: (1) a duty or standard of care; (2) a breach of that duty; and (3) causation. W. Prosser, Handbook on the Law of Torts Sec. 30, at 13 (4th ed. 1971). The district court's grant of summary judgment to defendants must be affirmed if the evidence of negligence is too speculative to establish any material issue of fact. See In re Japanese Electronics Products Antitrust Litigation, 723 F.2d 238, 313 (3d Cir.1983); Neely v. St. Paul Fire & Marine Insurance Co., 584 F.2d 341, 346 (9th Cir.1978).
 
 
 30
 Zimmer has not adduced any evidence to suggest that class counsel's hiring of three professional firms to print, prepare and mail the notice was itself below the legal profession's standard of care with regard to class notice. We must view the evidence Zimmer has presented in light of the absence of a proffer of any standard of care in the legal profession. Zimmer primarily relies on "numerous information gaps" in the deposition testimony of the employees who conducted the mailing, as well as a lack of verification procedures. Both categories of evidence suggest, at best, errors of omission rather than commission, and thus highlight Zimmer's lack of proof regarding counsel's relevant duty. Unless a duty to verify is established, the absence of certain verification steps that Zimmer would have preferred to have seen performed is not meaningful. In fact, it is undisputed that some verification procedures were followed: a photocopy of the mailing labels was prepared, and the mailing label sheet was checked first for accuracy and later to ascertain whether all mailing labels were peeled off and affixed to envelopes.
 
 
 31
 Moreover, the probative value of "information gaps" in testimony about a specific mailing that occurred nearly two years before depositions were taken is limited. The fact that an employee is unable to remember specifically who affixed the labels to the notice does not affirmatively establish, or even suggest negligence. This is particularly so where there is evidence that many class members, including companies on the same label page as Zimmer and on the preceding page, received the notice and filed claims.
 
 III.
 
 32
 For the foregoing reasons, and for the reasons stated by the district court, we will affirm the district court's order for summary judgment against plaintiff Zimmer.
 
 
 33
 WEIS, Circuit Judge, dissenting.
 
 
 34
 For present purposes, I am willing to accept the majority's position that class counsel followed customary procedures in proposing a first class mailing of the November notice. However, I do not agree that as a matter of law the defendants' fiduciary duties required no further action in the face of an obviously low reply rate. When the initial effort to provide notice elicited a response from only 12% of the class, counsel may have owed their clients the obligation to do more.
 
 
 35
 The November notice stated that approximately 20 million dollars less counsel fees of about 4 million dollars would be available for distribution. Despite the likelihood that filing a proof of claim would lead to a share of the fund, only 187 of a class of approximately 1550 business enterprises responded, 12% of those who had been identified as being eligible for payment in some amount. Counsel made no further effort to contact the absentee members of the class, but simply applied for court approval to distribute the fund pro rata to those who had filed claims.
 
 
 36
 It was not until after distribution of the fund that plaintiff first learned of the final settlement[1] and the requirement of filing a proof of claim. One of its officers contacted defendants about participating in the fund, but class counsel rejected the claim as untimely, and plaintiff filed this suit.
 
 
 37
 The district court dismissed the complaint in a series of orders. In rejecting the plaintiff's contention that defendants should have taken additional steps to notify members of the class, the court stated there was "no such duty." The district judge had no doubt that the mailing comported with the notice requirements of Fed.R.Civ.P. 23(e), as well as the court's order directing the use of first class mail.
 
 
 38
 The court cited no authority for its conclusion that counsel did not have a duty to follow-up. Having determined that there had been compliance with the notice requirements of Fed.R.Civ.P. 23(e) and the mailing order, the court apparently concluded that the fiduciary obligation counsel owed to the absentee members of the class had been fulfilled as well.
 
 
 39
 The inquiry into counsels' duty toward their clients should not have ended at that point. The fiduciary obligation of class counsel may go beyond the notice requirements of Rule 23(e). If the notice procedure is ineffective then there should be an exploration of the availability and feasibility of other steps together with a determination of whether it is reasonable to require counsel to implement them.
 
 
 40
 To illustrate the point, as an extreme example, one can hypothesize a situation in which none of the absentee class members responds to a settlement notice. In that situation, where adequate funds are available for distribution and reimbursement of expenses, surely counsel is not free to disburse the entire fund to the class representatives and then collect the legal fees without further efforts to contact the absentees. Obviously, the point at which the response level gives reasonable assurance of adequate notice must depend on the circumstances.
 
 
 41
 It is important to recognize the procedural posture of the case at hand. Insofar as the "follow through" count was concerned, the district court was confronted with what was essentially a motion to dismiss for failure to state a claim. See Fed.R.Civ.P. 12(b)(6). The affidavits which defendants filed to support their motion for summary judgment were directed to other issues and other counts.
 
 
 42
 In response to the defendants' motion, plaintiff contended that counsel owed a fiduciary duty to their client, a class member, to exercise reasonable care to see that it received notice of the settlement. Plaintiff argued the inferences to be drawn from the pleaded facts established that counsel did not act reasonably in failing to take additional measures when it was obvious the mailing had not yielded the expected results. According to plaintiff, class counsel could not simply walk away from the scene, having made no other attempt to notify the beneficiaries.
 
 
 43
 On the other hand, defendants characterized the case as one sounding in malpractice. They cited Lentino v. Fringe Benefit Employee Plans, Inc., 611 F.2d 474 (3d Cir.1979), as holding that expert testimony is required to establish the appropriate standard and whether defendants complied with it. In the absence of expert evidence, defendants contended that the plaintiff's case could not survive summary judgment. They also argued that on the basis of statistics culled from NEWBERG ON CLASS ACTIONS Sec. 2695, February 1984. Current Supp., Table I at CS7-57 to CS7-62, that a 12% return rate was consistent with that in similar settlements.[2]
 
 
 44
 Lentino, however, is a case which sets out the requirements for proof at trial. It is not applicable when, as here, defendants move to dismiss the complaint for failure to state a claim. Having chosen that course, they must assume that the allegations in the complaint are true. Plaintiff need not prove its facts in response to the motion nor must it present testimony, expert or otherwise.
 
 
 45
 The complaint sets out some of the pertinent facts and charges that defendants were guilty of a breach of their duty to exercise reasonable care. If the court found that the plaintiff's allegations were inadequate, then an opportunity to amend should have been provided.
 
 
 46
 If the defendants' aim was to force plaintiff to present an expert's affidavit or sworn testimony, then the burden initially was on them to file their own expert's affidavit as part of their motion for summary judgment. Plaintiff would then be required to respond in appropriate fashion, either controverting the defendants' material or establishing its inapplicability.
 
 
 47
 If the motion here is construed as one for summary judgment, it fails to meet the requirements of Fed.R.Civ.P. 56. Defendants references to statistics in the NEWBERG commentary are neither sworn testimony nor affidavits. They are not facts which can support summary judgment nor do they require a response under oath. It follows, therefore, that on this record regardless of whether defendants' submission is characterized as a motion to dismiss or for summary judgment, the district judge erred in granting it.
 
 
 48
 In considering a motion for summary judgment, a court must recognize that where there is a disagreement about proper inferences to be drawn from the facts, a trial is required to resolve the conflicting versions of the parties. Peterson v. Lehigh Valley District Council, 676 F.2d 81 (3d Cir.1982). Any reasonable inferences from the facts must be resolved in favor of the party against whom judgment is entered. Betts Laboratories, Inc. v. Hines, 647 F.2d 402, 404 (3d Cir.1981).
 
 
 49
 As we noted in Lentino, the standard of care is a "question of fact that is best left to the presentation of evidence with the opportunity for cross-examination and rebuttal." Id. at 481. Plaintiff should have been given the opportunity to prove at trial that class counsel breached their fiduciary duty in failing to follow up.
 
 
 50
 Moreover, I do not find the commentary excerpts on which defendants relied to be persuasive in the circumstances here. As Herbert B. Newberg candidly writes, "There are few reported opinions that furnish any detailed information about proof of claim response rates, so that any statistics must generally be gleaned from unreported documents filed of record or unreported opinions.... [T]he claim response level will tend to vary with the circumstances, types of class notices employed, and size of individual claims involved in each case." NEWBERG ON CLASS ACTIONS Sec. 2695.
 
 
 51
 This court has had occasion to comment on the pertinent factors bearing on notice response in Kyriazi v. Western Elec. Co., 647 F.2d 388, 395 (3d Cir.1981). There we said, "Passivity among absent members is less likely to be a problem where liability is already established, the time of actual recovery is less remote, and the incentive for participation thus enhanced." Those factors are all present in the case at hand.
 
 
 52
 The appropriate standards for evaluating class counsels' duties to provide notice has seldom been discussed in case law. However, in Greenfield v. Villager Industries, Inc., 483 F.2d 824, 832 (3d Cir.1973), we said
 
 
 53
 "... in addition to the normal obligations of an officer of the court, and as counsel to parties to the litigation, class action counsel possess, in a very real sense, fiduciary obligations to those not before the court.... Not the least important of the fiduciary duties shared by counsel and the court is their duty to ensure that absentee class members have knowledge of proceedings in which a final judgment may directly affect their interest."
 
 
 54
 Although not often subject to judicial review, circumstances similar to those presented here are not completely unknown to decisional law. In Boeing Co. v. Van Gemert, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980), the Supreme Court noted the difficulties of notifying absentee class members in a case where the settlement amount and attorneys fees were substantially less, and the number of absentee class members greater, than in the case at hand. In Boeing, the Court observed that a master undertook extensive efforts to locate absentee class members, including the employment of a professional search firm.
 
 
 55
 In Entin v. Barg, 412 F.Supp. 508 (E.D.Pa.1976), the court discussed the engagement of a finding service to develop current addresses for potential class members whose initial notices were returned by the postal service as undeliverable. See also Duban v. Diversified Mortgage Investors, 87 F.R.D. 33, 43 (S.D.N.Y.1980). In addition to these references in case law, the follow-up activities of corporations soliciting proxies after an initial first class mailing are matters of common knowledge.
 
 
 56
 Depriving plaintiff of the opportunity to participate in the distribution is particularly unfortunate here because Zimmer's losses contributed to increasing the amount of the settlement achieved. In arriving at a suitable settlement, counsel no doubt accumulated the losses suffered by each member of the class as a beginning point and then applied the various factors which go into the determination of a fair and reasonable compromise of that total figure.
 
 
 57
 The settlement amount, therefore, took into account damages sustained by plaintiff, but, in distribution, its share was given pro rata to other members of the class. Those parties received not only the amount due them but the plaintiff's portion as well. To that extent, the recipients were overcompensated and plaintiff short changed. Cf. Beecher v. Able, 575 F.2d 1010 (2d Cir.1978).
 
 
 58
 Similarly, the fees which class counsel received were determined by a process in which the size of the settlement was a factor. In this respect, the losses sustained by plaintiff played a part in augmenting counsels' fee. Viewed in this light, it is apparent that counsel were not only fiduciaries, but well compensated ones as well.
 
 
 59
 In view of these considerations and given the limited response to the November 1981 mailing, I believe that plaintiff has presented sufficient facts to question the reasonableness of the defendants' failure to take follow-up action.
 
 
 60
 As the majority indicates, there are other matters bearing on ultimate liability, such as the possible duty of plaintiff itself to have followed up on the litigation. But that is a matter of defense not at issue here. Other factors as well might have had some effect on the outcome. For example, the relatively modest time and expenditure which would have been required to provide for another first class or certified mailing to those who did not respond to the initial notice would be a consideration. In view of the large settlement fund and money available for expenses, measures considered unreasonable in other circumstances may have been required here. These and other concerns were for a jury to weigh.
 
 
 61
 I would vacate the entry of summary judgment and remand for further proceedings.
 
 
 
 *
 Hon. Oren Harris, United States District Court for the Eastern and Western Districts of Arkansas, sitting by designation
 
 
 [1]
 The June 1st notice was to inform class members of the institution of the antitrust litigation, the partial settlements, their membership in the class, and the procedures to follow if they wished to opt out
 
 
 [2]
 The purpose of multiple mailings to class members is to guard against address errors. Thus, for example, Zimmer was listed seven times: four variations were addressed to its Indianapolis office, and three more to its South San Francisco office
 
 
 [3]
 Although there were only 1550 class members, 2,928 address labels were prepared, because of the procedure described in note 2 supra. The postal receipt indicates that 3,000 notices were mailed. The discrepancy between 3,000 and 2,928 appears to be attributable to the Post Office's weighing procedure
 
 
 [4]
 Zimmer did not raise the contingency fund argument on appeal
 
 
 [5]
 The November 10th notice need not meet the more stringent standards of Rule 23(c)(2), because that rule applies only to an opt-out notice at the time of (b)(3) class certification. See In re Gypsum Antitrust Cases, 565 F.2d 1123, 1126-27 (9th Cir.1977). The June 1st notice, however, which was effected in the same manner as the Nov. 10th notice, did fall under 23(c)(2), and presumably the district court applied the stricter standard in approving the form of that notice. The procedure for the June 1st notice has not been challenged
 
 
 [6]
 The Supreme Court's analysis in Mullane suggests that district courts should proceed on a case-by-case basis, not applying a flat rule, but exercising their discretion as the circumstances warrant. Mullane, 339 U.S. at 314, 70 S.Ct. at 657. In the specific situation where Rule 23(c)(2) applies, a court's discretion is more limited, Eisen, 417 U.S. at 175-77, 94 S.Ct. at 2151-52, but nothing in Rule 23 prohibits courts from requiring more than the Rule provides
 
 
 [7]
 If the line is difficult for the courts to trace after the fact, it is even more difficult for counsel to draw in the course of a proceeding. This may not excuse any breach of fiduciary duty, but it does raise serious questions about the propriety of applying a malpractice penalty after the fact where counsel did everything they were then expected to do. Cf. Supermarkets General Corp. v. Grinnell Corp., 490 F.2d 1183, 1186 (2d Cir.1974) ("we are loath to impose a [notice] requirement retroactively")
 
 
 [8]
 Were we sitting as a district court making the initial decisions to provide notice and to distribute the settlement, we might well have exercised our discretion to order further notice steps. However, we do not find ourselves in that posture, but rather we act here as a reviewing court. If we imposed such procedures now, we would be creating retroactive requirements. Whether this case is characterized as a malpractice action or a breach of fiduciary duty action, we cannot disregard the fact that class counsel did all they were ordered and expected to do. In the future, however, the district courts and class counsel might well consider whether in similar situations further procedures would be advisable
 
 
 [1]
 Although defendants are openly skeptical of the plaintiff's assertion that it did not receive notice, in the current posture of the litigation, the allegation must be accepted as true
 
 
 [2]
 If defendants are correct in this assertion, then they have raised a very serious question about the legitimacy of class action damage suits under Rule 23(b)(3). If, on the average only 12% of those who have sustained damages are interested in recovery, one may question the propriety of submitting claims on behalf of a class for verdicts or settlements based on 100% of the losses